1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

RICARDO VASQUEZ,

                                       Plaintiff,

      vs.

CHERYL PLILER, Warden, CSP-SAC,

                                   Defendant.

CASE NO.  03cv2194-J (WMc)

REPORT AND
RECOMMENDATION RE:
PETITION FOR WRIT OF HABEAS
CORPUS

## I.  INTRODUCTION

      Ricardo Vasquez ("Petitioner"), a state prisoner proceeding *pro se*, brings this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") challenging his San Diego Superior Court (Case No. SCD120491), which has been remanded to this Court by the United States Court of Appeals for the Ninth Circuit. [Case No. 03-cv-2194] [Doc. No. 39.]  In his original Petition to this Court, Petitioner challenged his convictions for first degree murder, accessory to attempted murder and second degree robbery.  [Doc. No. 1.]  This Court denied the Petition, finding the claims procedurally barred.  [Doc. No. 18.]  The Petition was remanded for consideration of whether Petitioner's statute of limitations may be equitably tolled, possibly preventing procedural default.  [Doc. No. 39.]  This Court **RECOMMENDS** equitable tolling be **GRANTED** to the Petitioner.  After reviewing the merits of the Petition, Respondent's Memorandum of Points and Authorities in Support of Answer to Petition for Habeas Corpus ("Answer"), and all supporting documents submitted by the parties, **IT IS RECOMMENDED** the

- 1 -

1   Petition be **DENIED** for the reasons set forth below.

2   **II.  PROCEDURAL HISTORY**

3           In November of 1996, Petitioner was charged, along with co-petitioners Arath Blanco

4   Rodrigo Juan Fuerte and co-defendants Jose Garcia, Angel Ojeda, and Gabriel Uribe, with the

5   murder of Juan Avita, the attempted murder of Juan's son Raul Avita, and the robberies of both

6   men.  [Supp. Lodgment No. 1 at 2.] Petitioner pled not guilty to the charges and a jury trial

7   commenced in October of 1997.  [*Id.*]  In December of 1997, Petitioner was found guilty of first

8   degree murder, accessory to murder, and second degree robbery.  [*Id.* at 3.] In April of 1998,

9   Petitioner was sentenced to 25 years to life with a concurrent middle term of three years.  [*Id.*]

10  Petitioner filed timely appeals from the judgments, and on April 30, 2001, the California Court of

11  Appeal affirmed Petitioner's conviction.  [Supp. Lodgment No. 1.]  The California Supreme Court

12  then denied review on August 8, 2001.  [Supp. Lodgment No. 3.]  On July 25, 2002, Petitioner

13  sought state collateral relief by filing a Petition for Writ of Habeas Corpus with the California

14  Superior Court, which was denied on August 15, 2002.  [Doc. No. 17 at 3.]  On September 3,

15  2002, Petitioner filed a Petition for Writ of Habeas Corpus with the California Court of Appeal,

16  Fourth Appellate District, Division One.  [*Id.*]  The court denied the Petition on December 13,

17  2002.  [*Id.*]  On December 21, 2002, Petitioner filed a Petition for Review of this denial with the

18  California Supreme Court, which was denied on February 25, 2003.  [*Id.*]

19          On March 9, 2003, Petitioner filed a Petition for Writ of Habeas Corpus with the California

20  Supreme Court.  [*Id*.]  Petitioner asserted eight claims in his Petition: (1) the trial court erred when

21  it instructed the jury co-defendant Gabriel Uribe was an accomplice as a matter of law; (2) the trial

22  court erred when it denied an evidentiary hearing on Petitioner's motion to quash the jury panel;

23  (3) ineffective assistance of trial counsel; (4) jury instruction 2.21.2 violated his right to due

24  process; (5) the trial court's "pinpoint instruction" about the state's key witness unconstitutionally

25  barred the jury from considering crucial evidence; (6) ineffective assistance of appellate counsel;

26  (7) cumulative error violated his rights to due process, trial by jury, and effective assistance of trial

27  and appellate counsel; and (8) juror misconduct.  [*Id.*]  The court denied the petition on October

28  29, 2003, citing *In re Clark,* 5 Cal. 4th 750 (1993) and *In re Robbins*, 18 Cal. 4th 770, 780 (1998).

[Supp. Lodgment No. 4.]

On November 3, 2003, Petitioner filed the instant Petition, raising claims identical to those raised in his March 9, 2003 petition to the California Supreme Court. [Doc. No. 1.] This Court denied the Petition on August 17, 2004, holding, although the Petition was timely filed, Petitioner was barred from receiving federal habeas relief by state procedural rules. [Doc. No. 18.] In judging the Petition as timely, this Court relied on *Dictado v. Ducharme*, finding Petitioner entitled to a statutory tolling of the one-year limitations period for the time during which his final state habeas petition was pending before the California Supreme Court. [*Id.* at 7]; *see also Dictado*, 244 F.3d 724, 726 (9th Cir. 2001). While Petitioner's appeal to the Ninth Circuit Court of Appeals was pending, however, the United States Supreme Court entered its decision in *Pace v. DiGuglielmo*, abrogating the holding of *Dictado* by denying the application of statutory tolling during the pendency of a petition that is not "properly filed." *Pace*, 544 U.S. 408 (2005). Through its citation to *In re Clark* and *In re Robbins*, the California Supreme Court denied Petitioner's final state habeas petition as untimely. *See In re Clark*, 855 P.2d 729 (Cal. 1993); *In re Robbins*, 959 P.2d 311, 317-18 (Cal. 1998). As such, Petitioner's final state habeas petition was not "properly filed" as required by 28 U.S.C. § 2244(d)(2), thereby preventing the application of statutory tolling of the limitations period during the pendency of that petition. *Pace*, 544 U.S. at 413. Petitioner's federal habeas petition, therefore, was untimely. [Doc. No. 39 at 2.] The Court of Appeals for the Ninth Circuit remanded for the purpose of determining whether Petitioner is entitled to equitable tolling of the one-year statute of limitations. [Doc. No. 39.] Accordingly, this Court issued an Order for Additional Briefing and Lodgments on March 28, 2008. [Doc. No. 48.]

### III. STATEMENT OF FACTS

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2245(e)(1). Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id*; *see also Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied*, 522 U.S. 1008 (1997) (overruled on other grounds by *Lindh v. Murphy*, 521 U.S. 320 (1997) (stating federal courts are required to "give great deference to the state court's factual findings.")) When there is no reasoned decision from the state's highest court,

the Court "looks through" to the last reasoned state-court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003).

The following facts are taken from the California Court of Appeal's opinion regarding Petitioner's direct appeal. (Supp. Lodgment No. 1.)[1]

> Raul [Avita] testified that on October 27, 1996, he lived on Franklin Street in San Diego with his father Juan, his brother, his sisters and his mother. At approximately 10:00 p.m., Raul and Juan left their home and walked to Raul's cousin's home. As Raul and Juan were returning home, walking up 30th Street, a group of men came up to them. Raul and Juan crossed the street and an individual crossed the street behind them and said in Spanish, "Hey, guy, you have $5?" The man came from a van that was facing 31st Street. The man was tall, kind of chubby "Mexican," 20 to 27 years old, had a short, flattop haircut and was wearing a brown T-shirt.

> Raul told the man he did not have any money. The man took a step backwards, came back, and punched Raul on the left side of his forehead. Raul heard others running up from behind, and he and Juan ran toward a gas station. Raul could hear four or five people running behind them. Raul felt another blow on the back left side of his head, towards the top. After that, he lost consciousness. When he regained consciousness, people were hitting him. He was lying on the ground face down, with his legs in the street and his chest on the sidewalk. At that point he saw his father Juan getting hit. The same people who had been kicking him were also hitting his father, who was about five feet away. The attackers would beat Raul, then beat Juan, and then come back to Raul.

> Several men were striking Raul, kicking him in the head, face, neck and torso. Raul had his hands over his head as he was being kicked. Some of the assailants were wearing boots. Raul was on the ground for about 10 minutes while

---

[1] Petitioner's appeal was consolidated with that of co-defendants Arath Blanco, Rodrigo Juan Fuerte, Jose Garcia, Angel Ojeda and Gabriel Uribe for purposes of direct appeal before the California Court of Appeal. (Supp. Lodgment No 1.)

1   he was being kicked and could not breathe.  When he let out a moan, someone said,

2   "Well, let's go," and the assailants ran towards an alley.

3           Raul tried to get up but kept falling backwards.  After about five minutes, he

4   got up an walked towards Logan Avenue.  He did not know his whereabouts.  He

5   then remembered what had happened, came back and found his father lying on the

6   ground below the sidewalk.  Juan's nose looked "really wide."

7           Raul moved Juan to the sidewalk.  He pushed his father's chest to try to get

8   air moving.  At that point his father was still breathing.  Raul told a man who drove

9   by in a truck that he and his father had been beaten up.  Police officers arrived.  By

10   that time Juan was not breathing.

11           The police took Raul to the hospital.  Raul suffered a sunken rib, a cut to the

12   back of his head, and lumps on his head.  Staples were put on the wound to his head

13   to close it.  After the attack, Raul's and Juan's wallets were missing.  All Raul had in

14   his wallet was $4.00 and a Price Club card.  Raul did not know if there was any

15   money in Juan's wallet.

16   (Supp. Lodgment No. 1 at 5-7; footnote removed.)

17           Two witnesses, Myrna Zerpa and Mario Monterrosa, testified to Petitoner's involvement in

18   the beating of Raul and Juan.  Monterrosa identified Petitioner as the individual who approached

19   Juan and Raul asking for money, then commenced attacking Raul. (*Id.* at 7-10.)  Monterrosa

20   admitted, however, "he drank a 12-pack of beer and a half a bottle of vodka the evening of the

21   murder and assault. (*Id.*)  "On cross-examination, Monterrosa also admitted that he had also drunk

22   tequila that evening, and that he had used crack cocaine on a daily basis for quite some time. . . .

23   Monterrosa also admitted that between the time of the murder and interviews with police officers

24   and investigators, he had tried to recreate his memory of events, and that he was on PCP one of the

25   times he tried to recreate his memory." (*Id.* at 9.)

26   Gabriel Uribe, Petitioner's co-defendant, testified to Petitioner's involvement as part of his plea

27   bargain. (*Id.* at 10-14.)  Uribe further testified to having witnessed Petitioner and another

28   individual discard the victims' wallets and attend a meeting at Petitioner's house after the incident,

1  during which Petitioner "told everyone that they should make up a story and indicated that he had

2  already made up a story." (*Id*.)

3  **IV.  STANDARD OF REVIEW**

4      Title 28, United States Code, § 2254 sets forth the following scope of review for federal

5  habeas corpus claims:

6      (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall

7      entertain an application for a writ of habeas corpus on behalf of a person in custody

8      pursuant to the judgment of a State court only on the ground that he is in custody in

9      violation of the Constitution or laws or treaties of the United States.

10      . . . .

11      (d) An application for a writ of habeas corpus on behalf of a person in custody

12      pursuant to the judgment of a State court shall not be granted with respect to any

13      claim that was adjudicated on the merits in State court proceedings unless the

14      adjudication of the claim -

15          (1) resulted in a decision that was contrary to, or involved an unreasonable

16          application of, clearly established Federal law, as determined by the

17          Supreme Court of the United States; or

18          (2) resulted in a decision that was based on an unreasonable determination

19          of the facts in light of the evidence presented in the State court proceeding.

20  28 U.S.C. § 2254(a), (d)(1)-(2).

21      When determining "clearly established federal law" under section 2254(d)(1), federal

22  courts look to United States Supreme Court holdings at the time of the state court's decision.

23  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 412

24  (2000)).  Ninth Circuit law may also be considered for "its persuasive authority in applying

25  Supreme Court law." *Van Tran v. Lindsey*, 212 F.3d 1143, 1154 (9th Cir. 2003) (overruled on

26  other grounds by *Lockyer*, 538 U.S. 63); *Clark v. Murphy*, 331 F.3d 1069 (9th Cir. 2003), *cert.*

27  *denied*, 540 U.S. 968 (2003).

28      A state court's decision is "contrary to" clearly established United States Supreme Court

precedent if (1) the state court applies a rule different from the governing law set forth in Supreme Court cases, or (2) the state court confronts a set of facts that are materially indistinguishable from a Supreme Court case, but still reaches a different result. *Williams*, 529 U.S. at 405-06, 412; *Bell v. Cone*, 535 U.S. 685, 694 (2002); *Lockyer*, 538 U.S. at 73; *Clark*, 331 F.3d at 1067.  It is not required that a state court decision cite to or even be aware of clearly established Supreme Court precedent, so long as neither the reasoning nor the result of the state court decision contradicts it. *Early v. Packer,* 537 U.S. 3, 8 (2002).

A state court decision may involve an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407.  Alternatively, an unreasonable application may be found "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Clark* 331 F.3d at 1067.  An unreasonable application of federal law requires the state court decision to be more than incorrect or erroneous. *Lockyer*, 538 U.S. at 76.  Instead, the state court's application must be "objectively unreasonable." *Id.*

If the dispositive state court order does not "furnish a basis for its reasoning," however, federal habeas courts must conduct an independent review of the record to determine whether the state court unreasonably applied controlling federal law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

## V.  DISCUSSION

### A.    Remanded Issues

In its opinion, the Court of Appeals for the Ninth Circuit vacated and remanded the district court's order with instructions to determine whether Petitioner is entitled to equitable tolling of the one-year statute of limitations.  Upon a determination of Petitioner's entitlement to equitable

1   tolling, the Ninth Circuit instructed this Court to address whether Petitioner's Petition is

2   procedurally defaulted due to failure to exhaust state remedies with respect to Claims One and

3   Seven of the Petition.  Further, a determination is required as to whether this Court is precluded

4   from reaching the merits of Petitioner's claims because California's timeliness rule "is

5   independent of the federal question and adequate to support the judgment." *Bennett v. Mueller*,

6   322 F.3d 573, 580 (9th Cir. 2003).

7   **i.**    **Equitable Tolling**

8       Petitioner contends his habeas petition should not be considered procedurally defaulted

9   because he is entitled to equitable tolling.  [Doc. No. 42.]  In pursuing habeas relief, Petitioner

10   relied on Ninth Circuit precedent which was later overruled by the Supreme Court.  [*Id*. at 4.]  The

11   Supreme Court's decision in *Pace v. DiGuglielmo* held untimely state habeas corpus petitions do

12   not toll the federal statute of limitations for filing a federal petition. *Pace*, 544 U.S. 408.  Under

13   existing precedent, Petitioner's federal habeas petition would have been timely, but the Petition

14   became time-barred when the Supreme Court decided *Pace*.  [Doc. No. 39 at 2.]

15       Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Petitioner

16   had one year from the date his conviction became final to file a habeas corpus petition in federal

17   court. U.S.C. § 2244(d)(1).  The AEDPA allows tolling of the one-year limitations period while a

18   "properly filed application" for post-conviction is pending in state court. 28 U.S.C. § 2244(d)(2).

19   In accordance with *Pace*, decided on April 27, 2005, an untimely state petition not "properly filed"

20   under section 2244 does not toll that section's statute of limitations. *Pace*, 544 U.S. at 413.  Before

21   the *Pace* decision, however, Ninth Circuit precedent stated "an untimely . . . post-conviction

22   petition was 'properly filed' for purposes of § 2244(d) and tolled the statute of limitations while the

23   petition was pending in the state courts." *Dictado*, 244 F.3d at 726 (citing *Artuz v. Bennet*, 531

24   U.S. 4 (2000)).

25       Petitioner's one-year statute of limitations began to run on November 7, 2001, the day after

26   his conviction became final.  Petitioner filed a petition for post-conviction relief with the superior

27   court on July 25, 2002, 259 days later.  [Doc. No. 18 at 5.]  Petitioner then filed a habeas petition

28   with the California Court of Appeal on September 3, 2002, which was denied December 13, 2002.

1    [*Id*. at 3.]  One week later, Petitioner filed a petition with the California Supreme Court, seeking

2    review of the Court of Appeal's denial of his habeas petition.  [*Id*.]  This petition was denied on

3    February 25, 2003.  [*Id*.]  During this time Petitioner was properly pursuing state collateral

4    remedies. *See Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999).  The Supreme Court has held

5    post-conviction relief petitions will be deemed 'pending' for purposes of 28 U.S.C. § 2244(d)(2),

6    even during the intervals between the denial of a petition by one court and the filing of a petition

7    for review at the next level. *Carey v. Saffold*, 536 U.S. 214 (2002).  Therefore, AEDPA's statute of

8    limitations was tolled while Petitioner sought state court review from July 25, 2002 until February

9    5, 2003, leaving 106 days remaining of the AEDPA's limitations period. *See Nino*, 183 F.3d at

10   1006.

11        Twelve days elapsed before Petitioner filed a petition for writ of habeas corpus with the

12   California Supreme Court on March 9, 2003.  [Doc. No. 18 at 5.]  Statutory tolling is not available

13   for these twelve days because "[a] petitioner is not entitled to tolling during the gap between the

14   completion of one full round of state collateral review and the commencement of another."

15   *Delhomme v. Ramirez*, 340 F.3d 817, 820 (9th Cir. 2003) disapproved on another point as dicta in

16   *Evans v. Chavez*, 546 U.S. 189, 196 (2006).  The California Supreme Court denied the petition on

17   October 29, 2003. (Supp. Lodgment No. 4.)

18        Petitioner filed the instant Petition on November 3, 2003.  [Doc. No. 1.]  This Petition is

19   timely if AEDPA's statute of limitations period was tolled from March 9, 2003, when Petitioner

20   filed his last petition with the California Supreme Court, to October 29, 2003, when that petition

21   was denied.  [Doc. No. 18 at 4-6.]  Respondent argues the AEDPA's limitations period was not

22   tolled during this period because the California Supreme Court denied the petition "on the ground

23   that it was untimely and successive." [Doc. No. 9 at 9.]  Under the prior *Dictado* rule, however,

24   this is incorrect. *Dictado*, 244 F.3d 724.  *Dictado* holds a petition to be considered "filed when it is

25   delivered to, and accepted by, the appropriate court officer for placement into the official record."

26   *Id.* at 726.  Thus, "the question whether an application has been 'properly filed' is quite separate

27   from the question whether the claims contained in the application are meritorious and free of

28   procedural bar." *Id.*  Petitioner's California Supreme Court habeas petition was, therefore,

1   "properly filed" according to Ninth Circuit precedent in spite of having been dismissed by the

2   Supreme Court as untimely and successive.  As a result, Petitioner's federal habeas corpus petition

3   was deemed timely under the AEDPA.  [Doc. No. 18.]

4        In *Pace*, The Supreme Court overruled Ninth Circuit precedent by holding as untimely

5   state post-conviction petitions that are not "properly filed' under the AEDPA, and which do not toll

6   the AEDPA's statute of limitations. *Pace*, 544 U.S. 408.  Under the rule announced in *Pace*,

7   Petitioner's federal habeas corpus petition is time-barred, as the AEDPA's statute of limitations

8   would have run continuously from February 25, 2003.  However, where a good faith litigant might

9   otherwise be prevented from "having a day in court," equitable tolling is permitted to "soften the

10   harsh impact of technical rules." *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004). "Equitable

11   tolling is typically granted when litigants are unable to file timely petitions as a result of external

12   circumstances beyond their direct control." *Harris v. Carter*, 515 F.3d 1051 (9th Cir. 2008) (citing

13   *Stillman v. LaMarque*, 319 F.3d 1199, at 1202 (2003)).  In order to receive the benefit of equitable

14   tolling, Petitioner must establish he has been pursuing his rights diligently, and some extraordinary

15   circumstance stood in his way. *Pace*, 544 U.S. at 418.  Equitable tolling is typically denied,

16   however, when the litigant's own mistakes clearly contribute to his predicament.  *Lawrence v.*

17   *Florida*, 127 S.Ct. 1079, 1085 (2007).

18        Petitioner claims his reliance upon then-current Ninth Circuit precedent and the

19   overturning of such by the Supreme Court at a point during which his Petition had already been

20   filed, created a circumstance beyond his control which made it impossible to file his Petition in a

21   timely manner.  [Doc. No. 42.]  Respondent further argues 28 U.S.C. § 2244(d) does not allow for

22   equitable tolling and, in the alternative, Petitioner is not entitled to equitable tolling in this matter

23   because he cannot demonstrate the "extraordinary circumstances" required for equitable tolling to

24   apply.  [Doc. No. 45.]  Respondent argues Petitioner is not entitled to equitable tolling on the

25   grounds that Petitioner could have filed a timely petition if not for the "piecemeal," delayed

26   manner in which Petitioner brought his claims.  [*Id*. at 16.]  This delay, Respondent argues,

27   demonstrates Petitioner does not meet the diligence requirement and should not benefit from

28   equitable tolling.  [*Id*.]  Respondent contends Petitioner's decision to seek multiple rounds of state

1    appellate review was the direct result of his failure to understand the AEDPA's statute of

2    limitations, and clearly established federal law holds misunderstanding on the part of the Petitioner

3    to be an invalid reason for the application of equitable tolling.  [*Id.*]

4         The Ninth Circuit's holding in *Harris v. Carter*, however, suggests Respondent's

5    conclusion is incorrect.  *Harris*, 515 F.3d 1051.  *Harris* involved factual circumstances nearly

6    identical to those surrounding the instant Petition. *Id.* at 1052-53.  Harris sought three rounds of

7    post-conviction state appellate relief, the latter two of which were deemed untimely. *Id.*  He

8    subsequently filed a federal habeas corpus petition and the State of Washington sought dismissal,

9    arguing Harris' federal habeas petition was time-barred under *Pace*.  *Id.*  "Harris did not contest

10   that his petition would be time-barred under a strict application of *Pace*, but argued that he was

11   entitled to equitable tolling of the statute of limitations *because* he relied on controlling Ninth

12   Circuit precedent in waiting to file his federal habeas petition." *Id.* at 1045 (emphasis in original).

13   The Ninth Circuit granted equitable tolling of the limitations period, holding as non-dispositive the

14   fact that Harris could have filed a timely federal habeas petition. *Id.* at 1055.  According to the

15   Ninth Circuit, the critical fact "is that [Petitioner] relied in good faith on then-binding circuit

16   precedent in making his tactical decision to delay filing a federal habeas petition." *Id.*

17   Accordingly, the Court found such reliance was not the result of oversight, miscalculation, or

18   negligence on Harris' part. *Id.*

19        *Harris* held Petitioner's actions in successively petitioning for state post-conviction relief,

20   while ensuring enough time would remain to file a federal habeas petition under the then-existing

21   *Dictado* rule, sufficiently demonstrated the required diligence on the part of the Petitioner.  *Id.* at

22   1057.  The court noted Petitioner was "undoubtedly aware of when AEDPA's statute of limitations

23   would expire under our rule in *Dictado*" and held Petitioner could be presumed to have "chose[n]

24   his tactical strategy precisely because he believed that, under *Dictado*, he could pursue relief in

25   state courts without jeopardizing his ability to file a federal habeas petition." *Id.* at 1055.

26   Furthermore, Harris had no control over "the operative fact that caused his petition to become

27   untimely – the Supreme Court's decision in *Pace*." *Id.* at 1056.  By overturning *Dictado*, the

28   Supreme Court immediately time-barred Harris' petition, thereby making it impossible for

1   Petitioner to file in a timely manner. *Id.* "These are precisely the circumstances," the Court

2   concluded, "in which equitable principles justify tolling of the statute of limitations." *Id.*

3        Petitioner, like Harris, sought multiple rounds of state post-conviction relief, the latter of

4   which was deemed untimely. *Dictado* was decided 15 months before the filing of Petitioner's first

5   state habeas petition.  Therefore, the Petitioner, like Harris, may be presumed to have been aware

6   of and relied upon *Dictado* in formulating his appellate strategy. *Id.* at 1055.  Although

7   Respondent is correct that Petitioner could have filed a timely petition under the *Pace* standard had

8   he opted to bring all of his claims at once, Petitioner's federal habeas corpus petition remained

9   timely under the rule set forth in *Dictado*.  As such, Petitioner successfully meets the diligence

10  requirement for equitable tolling.  Petitioner also meets the second requirement for equitable

11  tolling, a showing of extraordinary circumstances which prevent the timely filing of the petition:

12  Petitioner had no control over the Supreme Court's decision to abrogate *Dictado,* and was correct

13  in his interpretation of the then-applicable legal standard.  Indeed, as noted in *Harris*, "the rare

14  case where a petitioner relies on our legally erroneous holding in determining when to file a

15  federal habeas petition," is not "the result of oversight, miscalculation or negligence on his part, all

16  of which would preclude the application of equitable tolling." *Id.*  In light of *Harris*, the facts of

17  which are analogous to Petitioner's, the Petitioner is entitled to equitable tolling of the statute of

18  limitations.

19  **ii.    Exhaustion of State Remedies**

20       Upon determining Petitioner is entitled to equitable tolling, the Court must next address

21  whether the Petition is procedurally defaulted due to failure to exhaust state remedies with respect

22  to Claims One and Seven of the Petition.  [Doc. No. 39 at 4.] Because Respondent concedes

23  Petitioner exhausted Claim One, the analysis will be limited to whether Petitioner exhausted state

24  remedies with respect to Claim Seven.

25       Claim Seven asserts "cumulative error violated Petitioner's rights to due process, trial by

26  jury, and the effective assistance of trial and appellate counsel under the 5th, 6th, and 14th

27  Amendments (based upon the errors described in Claims One through Six, plus Eight, and the

28

1   error described in the answer to Question #15(c), ante)."[2] [Doc. No 1 at 6.]  Both the Petitioner and

2   the Court have limited the scope of this claim to jury misconduct.  [Doc. No. 49 at 3; Doc. No. 39

3   at 5.]  Petitioner contends he properly exhausted Claim Seven through his incorporation by

4   reference of all his co-petitioners' arguments pursuant to Rule 28 of the California Rules of Court.

5   [Doc. No. 49 at 2.]   Specifically, Petitioner incorporated by reference co-petitioner Rodrigo Juan

6   Fuerte's argument that "the prosecutor committed prejudicial misconduct depriving Petitioner of

7   his rights to due process and confront witnesses [*sic*] argued on pages 6 to 12 of Fuerte's petition

8   for review" and co-petitioner Arath Blanco's argument regarding "whether the trial court erred in

9   failing to modify CALJIC No. 3.01, and instructing the jury regarding motive under CALJIC No.

10  2.51." (Supp. Lodgement 2 at 13.)  However, upon Order of this Court, Petitioner submitted

11  further briefing on the issue, arguing "[w]hile . . . Petitioner followed up his general incorporation

12  by reference with statements regarding some particular issues that had been raised in other

13  petitions, there is nothing in this section which in any way limited his incorporation to only those

14  issues later identified."  Petitioner contends the assertion "[P]etitioner incorporates herein by

15  reference the arguments advanced by his co-petitioners in their petitions for review" is sufficient

16  "to include presentation of all their arguments, including claim seven (the jury misconduct issue)

17  presented by co-petitioner Fuerte in his petition." [Doc. No. 49 at 3.]  Petitioner further contends

18  "this conclusion is buttressed by the fact that the California Supreme Court denied the petitions of

19  all three defendants in a single order."

20         The state court of appeal directly addressed Petitioner's Claim Seven (juror misconduct) in

21  the court's April 2001 decision affirming the judgments of the superior court.  The court

22  specifically stated, "Fuerte, joined by Blanco and *Vasquez*, contends that the court erred in

23  denying his motion for a new trial based upon asserted juror misconduct." (Lodgment 1 at 26)

24  (emphasis added).  In the following analysis, the court repeatedly refer to "appellants" as a

25  collective, further supporting Petitioner's contention of inclusion through incorporation of his co-

26  _____

27         [2] In his answer to Question 15(c) Petitioner asserts "the instruction defining felony-murder
    (CALJIC 8.27; CT 1547) was flawed because it did not properly state the 'complicity element' of the
    offense as described by the California Supreme Court in People v. Pulido (1997) 15 Cal. 4th 713, 723,
28  729 & n.6.  [*sic*] This error violated Petitioner's rights to due process, trial by jury, and to have the
    prosecution prove every element of the charge (Amends. 5, 6, 14.)."

1   petitioner's arguments.  Thus, the California Supreme Court's subsequent denial of Petitioner's

2   petition marked the completion of state court review of Claim Seven, as the Supreme Court was

3   given a fair opportunity to review the merits of the claim. *Roman v. Estelle*, 917 F.2d 1505 (9th

4   Cir. 1990).  The Petition is not procedurally defaulted for failure to exhaust state remedies with

5   respect to Claims One or Seven.  Accordingly, this Court will consider the merits of both claims,

6   unless precluded from doing so by California's timeliness rule being independent and adequate.

7   **iii.     Independent and Adequate Grounds**

8           When the state pleads the existence of an independent and adequate state procedural bar

9   which the Ninth Circuit previously determined to be inadequate, Petitioner satisfies his burden "by

10  simply challenging the adequacy of the procedure." *King v. LaMarque*, 464 F.3d 963, 967 (9th Cir.

11  2006).  In its opinion, the Ninth Circuit determined Petitioner had satisfied his burden and shifted

12  the burden to the state in order to establish the state procedural rule had since become adequate.

13  [Doc. No. 39 at 6-7.]  Consequently, this Court ordered further briefing on "[w]hether Respondent

14  ha[d] met the burden of establishing California's independent timeliness rule, held inadequate by

15  this Court in *King v. LaMarque* because it is ambiguous and inconsistently applied, ha[d] since

16  become adequate." [Doc. No. 48.]  Respondents failed to submit such further briefing, and

17  therefore failed to meet the requisite burden.[3]  Accordingly, this Court is not precluded from

18  considering the merits of Petitioner's claims due to California's timeliness rule.

19  **B.     Petitioner's Claims**

20          Upon the determination Petitioner was entitled to equitable tolling of the statute of

21  limitations, Petitioner sufficiently exhausted Claims One and Seven with regard to state remedies,

22  and Petitioner's uncontested challenge of the adequacy of the state procedural bar, Petitioner's

23  federal petition claims must be considered on the merits.  [ Doc. No. 39.]

24  **i.     Error in Jury Instructions**

25          Petitioner's first claim asserts the trial court erred when it instructed the jury co-defendant

26

27          [3]  On November 13, 2007, Respondents filed Response to Order Directing Further Briefing
    from Respondent. [Doc. No. 45.] The Response provided further briefing regarding the application
28  of the doctrine of equitable tolling, but failed to address the independence and adequacy of the state
    procedural bar.

Gabriel Uribe was an accomplice as a matter of law.[4]  Specifically, Petitioner claims the jury instruction defining felony murder (CALJIC 8.27; CT 1547) "did not properly state the 'complicity element' of the offense as described by California law" and "was inconsistent with much of the state's evidence, Petitioner's testimony, and the defense theory." [Doc. No. 1 at 9, 11.] This claim was addressed by the California Court of Appeal on direct appeal and presented to the state supreme court in a habeas petition. (Supp. Lodgment No. 1, 2.)

To demonstrate reversible error in a court's jury instructions, Petitioner must not only demonstrate the instruction was in error, but also the instruction was so prejudicial there is a reasonable possibility a result more favorable to Petitioner would have been reached had the instructions not been given.  *People v. Watson*, 46 Cal.2d 818, 836 (1956).

In support of his argument, Petitioner cites *People v. Pulido* to address the complicity element required to prove felony murder in California.  [*Id.* at 9 (citing *People v. Pulido*, 15 Cal.4th 713 (1997)).]  In *Pulido,* the court held if one person, acting alone, kills in the perpetration of a robbery, and another person thereafter aids and abets the robber in the asportation and securing of the property taken, the second person is not guilty of first degree murder.  *Pulido*, 15 Cal.4th at 729.  An accomplice's liability for a homicide committed in furtherance of a common purpose or common design of robbery does not include a killing that *preceded* any agreement or intent to participate in the robbery, since the killer was not then acting in pursuit of any such common design or purpose with the accomplice. *See* 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) § 472 (emphasis added).   The *Pulido* court reasoned an accomplice must form the intent to aid and abet before the commission of the killing in order to be guilty of first degree murder. *Pulido*, 15 Cal.4th at 729.  Further, an accomplice is guilty of any homicide committed in furtherance of a common purpose, even if the killing was perpetrated by another. *Id.*

---

[4]  In the supporting facts of Petitioner's first claim, Petitioner contends "there were two robberies charged in the case: Juan's and Raul's" and "the felony-murder instruction did not require the jury to find that the murderer(s) and the robber(s) be engaged in the **same** robbery." [Doc. No. 1 at 9 (emphasis in original).]  Later, Petitioner asserts "the jury was told that the crime of robbery was ongoing until the escape and asportation phases of the crime were completed," citing CALJIC 8.21.1 (CT 1495) and CALJIC 9.40.1. [Id. at 10.]  It is unclear whether Petitioner intended these assertions be considered claims, as Petitioner fails to support any such claim with questions of law or fact. Petitioner's intentions are moot, however, because any such claim was not exhausted on direct review and would thus render Petitioner's federal Petition procedurally defaulted.

1    The facts in Petitioner's case are readily distinguishable from the facts in *Pulido*.  In

2  *Pulido*, the murder took place before the robbery, whereas the murder in Petitioner's case occurred

3  during the course of the robbery.  Specifically, the beating that ultimately killed the victim began

4  before Petitioner stole the victim's wallet and continued after the theft.  The importance of this

5  distinction (between a homicide committed before the underlying felony and a homicide

6  committed during the felonious act) is exemplified by the underlying intent of the felony-murder

7  rule, which is to deter felons from committing the underlying felony by holding them strictly liable

8  for negligent or accidental deaths that occur during, or result from, the commission of the

9  underlying felony.  As *Pulido* appropriately determined, extending the felony-murder rule's

10  complicity aspect to late joiners would not serve the primary purpose of the felony-murder rule.

11  This critical distinction between Petitioner's facts and the facts in *Pulido* demonstrate why the

12  *Pulido* decision does not apply to the instant case.

13    Petitioner's claim also fails to demonstrate the jury instruction was in error, based upon his

14  mistaken reliance on the ruling in *Pulido*,.  Thus, further analysis not necessary as to whether the

15  instruction was so prejudicial there is a reasonable possibility a result more favorable to Petitioner

16  would have been reached if the instructions had not been given.  Based on the foregoing, it is

17  **RECOMMENDED** the Court **DENY** Claim One.

18  **ii.    Denial of Evidentiary Hearing**

19    Claim Two of the Petition asserts the trial court erred when it denied an evidentiary hearing

20  on Petitioner's motion to quash the jury panel.  [Doc. No. 1 at 11.]  Defense counsel filed a Motion

21  to Challenge the Composition of San Diego County Juries and to Quash all Current and Available

22  Jury Panels on October 22, 1997, additionally requesting an evidentiary hearing to "vindicate his

23  factual claims." [*Id*. at 13.]  On October 20, 1997,[5] the motion to quash the panel was denied, and

24  on October 21, 1997, a renewed motion to quash the panel was denied, both denials asserted on the

25  grounds no *prima facie* showing was made.  [*Id.*]

26    The burden rests on Petitioner to establish by clear and convincing evidence the factual

27

28    [5] The filing dates are taken from the Petition and, while obviously incorrect, any discrepancy
does not affect the Court's findings.

1    determination by the state court was erroneous.  The presumption of correctness is not irrebuttable.

2    *Lafferty v. Cook*, 949 F.2d 1546, 1549 n.1 (10th Cir. 1991)  However, the presumption prevails

3    unless one of the circumstances listed in § 2254(d) exists.  *Tinsley v. Borg*, 895 F.2d 520, 524-25

4    (9th Cir. 1990) (at a post-trial hearing, during which allegations of jury partiality are addressed,

5    "the state court's findings are entitled to a presumption of correctness on federal habeas corpus

6    review").[6]

7         According to Petitioner, his defense counsel alleged in the motion to quash "that the jury-

8    eligible Hispanics composed 18% of the population in San Diego County, but only 4% of the

9    panels selected for Petitioner's case . . . resulting in a disproportionate elimination of Hispanics."

10   [Doc. No. 1 at 13.]  Defense counsel asked for a continuance and an evidentiary hearing to

11   "vindicate his factual claims." [*Id.*]  However, upon review, the trial court asserted no *prima facie*

12   showing was made to support Petitioner's motion and the motion was denied.

13        The Petition fails to establish any of the circumstances required to rebut the presumption of

14   correctness; nor are there facts sufficient to otherwise determine any such circumstances exist.

15   Absent support to the contrary, the trial court's determination regarding an evidentiary hearing on

16   Petitioner's motion to quash the jury panel is presumed to be correct.  Based on the foregoing, it is

17   **RECOMMENDED** the Court **DENY** Claim Two.

18   *///*

19

20        [6] Since the time *Tinsley* was decided in 1990, section 2254 has been revised.  However, at the
     time *Tinsley* was decided, Section 2254(d) stated in pertinent part:

21        (d) "In any proceeding instituted in a Federal court by an application for a writ of habeas
          corpus by a person in custody pursuant to the judgment of a State court . . . shall be presumed

22        to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent
          shall admit -

23        (1) that the merits of the factual dispute were not resolved in the State court hearing;
          (2) that the factfinding procedure employed by the State court was not adequate to afford a full

24        and fair hearing;
          (3) that the material facts were not adequately developed at the State court hearing;

25        (4) that the State court lacked jurisdiction of the subject matter or over the person of the
          applicant in the State court proceeding;

26        (5) that the applicant was an indigent and the State court, in deprivation of his constitutional
          right, failed to appoint counsel to represent him in  the State court proceeding;

27        (6) that the applicant did not receive a full, fair, and adequate hearing in the State court
          proceeding; or

28        (7) that the applicant was otherwise denied due process of law in the State court proceeding.
          . . .

1    **iii.**      <u>**Ineffective Assistance of Trial Counsel**</u>

2          In Claim Three of the Petition, Petitioner contends his right to the effective assistance of

3    counsel was violated by trial counsel's failure to request the jury receive verdict options of

4    accessory regarding Counts One and Three.  Petitioner asserts the trial court offered to allow

5    Petitioner lesser-related instructions on Counts One through Three, but Petitioner's trial counsel,

6    unlike the other four defense attorneys in the case, refused the accessory instructions, except as to

7    Count Two.  [*Id.* at 14.]  Petitioner alleges trial counsel's "refusal of the accessory instructions as

8    to Counts One and Three constituted conduct falling 'beneath prevailing norms of professional

9    conduct.'" [*Id.*] Petitioner raised this claim in his direct appeal as an independent claim. (Resp.

10   Lodgment 10 at 132.)

11         The right to effective assistance of counsel, as guaranteed by the Sixth Amendment, is

12   denied when "a defense attorney's performance falls below an objective standard of

13   reasonableness and thereby prejudices the defense."  *Yarbrough v. Gentry*, 540 U.S. 1, 4 (2003)

14   (citing *Wiggins*, 539 U.S. at 521 (2003); *Strickland v Washington*, 466 U.S. 687 (1984)).  In

15   circumstances where a state court has already considered and rejected an ineffective assistance

16   claim, a federal court shall not grant habeas relief unless the state court decision rejecting the

17   claim "resulted in a decision that was contrary to, or involved an unreasonable application of,

18   clearly established Federal law, as determined by the Supreme Court of the United States; or

19   resulted in a decision that was based on an unreasonable determination of the facts in light of the

20   evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1).  Further, the Supreme

21   Court has held claims of ineffective assistance of counsel are "mixed questions of law and fact"

22   and should not receive deference to the full extent of § 2254(d)(1).  *Strickland*, 466 U.S. at 698.

23   However, even in such cases where this Court is presented with a state court rejection of an

24   ineffective assistance claim, a petitioner is required to overcome the "presumption that, under the

25   circumstances, the challenged action 'might be considered sound trial strategy.'" *Bell,* 535 U.S. at

26   698 (2002) (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

27         In order to establish ineffective assistance of counsel, Petitioner must show both

28   incompetence and prejudice.  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466

1   U.S. at 698.  Unless Petitioner "makes both showings, it cannot be said that the conviction . . .

2   resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*,

3   466 U.S. at 687.  Furthermore, the standard governing competence requires Petitioner to show

4   "counsel's representation fell below an objective standard of reasonableness" and "[j]udicial

5   scrutiny of a counsel's performance must be highly deferential".  *Id.* at 688, 689.  Therefore, a

6   strong presumption must be maintained that counsel's performance falls within "the wide range of

7   reasonable professional assistance." *Id.*

8          Finally, even if it can be shown counsel has provided assistance falling below the

9   allowable standard of reasonableness, a showing of prejudice is required to establish a violation of

10  the Sixth Amendment. *Id.*  "It is not enough for the defendant to show that the errors had some

11  conceivable effect on the outcome of the proceeding." *Id*. at 693.  The Petitioner must show with

12  reasonable probability that but for counsel's errors, the result of the proceeding would have been

13  different. *Id.* at 694.  A "reasonable probability" is defined as a probability sufficient to undermine

14  confidence in the outcome of the proceeding. *Id.*

15         As noted above, the state court rejected Petitioner's independent claim of ineffective

16  counsel.  While the record fails to indicate precisely why Petitioner's trial counsel opted to reject

17  an instruction regarding a lesser-related offense, the Petitioner bears the burden of showing his

18  trial counsel's assistance fell below an objective standard of reasonableness.  *Strickland v.*

19  *Washington*, 466 U.S. at 687-88; *In re Cordero*, 46 Cal.3d 161, 180 (1988).  Given the lack of

20  indication in the record regarding trial counsel's motives, Petitioner is unable to overcome the

21  presumption that trial counsel's decision was sound trial strategy.  Therefore, it is

22  **RECOMMENDED** this Court **DENY** Claim Three of the Petition.

23  **iv.**     **Jury Instruction Violated Due Process**

24         Claim Four of the Petition asserts Petitioner's right to due process of law was violated by

25  jury instruction CALJIC 2.21.2, which shifted and diminished the state's burden of proof.  [Doc.

26  No. 1 at 15.]  Petitioner contends, "[a]s to any witness found by the jury to be willfully false in any

27  material part to their testimony, CALJIC 2.21.2 required the jury to accept the rest of [the

28  witness'] testimony if it is 'probably true.'" [*Id.*]  CALJIC 2.21.2 instructs, in part:

1    "[a] witness, who is willfully false in one material part of his or her testimony, is to be

2    distrusted in others.  [The jury] may reject the whole testimony of a witness who willfully

3    has testified falsely as to a material point, **unless, from all the evidence, you believe the**

4    **probability of truth favors his or her testimony in other particulars**." [*Id*. (*emphasis in*

5    *original*).]

6        "In conducting habeas review, a federal court is limited to deciding whether a conviction

7    violated the Constitution, laws or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62,

8    68 (1991); *see* 28 U.S.C. § 2254(a).  Habeas relief is not available for an alleged error in the

9    interpretation or application of state law.  *Estelle v. McGuire*, 502 U.S. at 67-68; *Jammal v. Van de*

10   *Kamp*, 926 F.2d 918, 919 (9th Cir. 1991); *see also Dugger v. Adams*, 489 U.S. 401, 409 (1989)

11   ("the availability of a claim under state law does not of itself establish that a claim was available

12   under the United States Constitution").  Furthermore, to the extent petitioner claims the jury

13   instruction was incorrect under state law, his claim is not cognizable on federal habeas review.

14   *Estelle v. McGuire*, 502 U.S. at 71-72.  To merit relief, petitioner must show the instructional error

15   so infected the entire trial the resulting conviction violated due process. *Id*. at 72; *Henderson v.*

16   *Kibbe*, 431 U.S. 145, 154 (1977); *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  Finally, the

17   allegedly erroneous instruction must be considered in the context of the trial record and the

18   instructions as a whole.  *Estelle v. McGuire*, 502 U.S. at 72; *Henderson*, 431 U.S. at 156; *Cupp v.*

19   *Naughten*, 414 U.S. at 146-47.

20       Indeed, a jury instruction that relieves the prosecution of its burden of proving every

21   element of an offense beyond a reasonable doubt violates due process. *See Patterson v. New York*,

22   432 U.S. 197 (1977); *Mullaney v. Wilbur*, 421 U.S. 684, 704 (1975); *Sullivan v. Louisiana*, 113 S.

23   Ct. 2078 (1993).  In the instant case, however, Petitioner fails to demonstrate his claim CALJIC

24   2.21.2 diminished the state's burden of proof.  Petitioner contends the jury instruction *required* the

25   jury to accept certain witness testimony if they believed it to be 'probably true.'  Petitioner

26   misinterprets the jury instruction.  As cited, CALJIC 2.21.2 instructs the jury they *may reject* the

27   testimony, in its entirety, of a witness who willfully has testified falsely as to a material point, *if*

28   the juror so chooses.  CALJIC 2.21.2 (emphasis added).  The instruction goes on to provide the

1   jury with the option to accept the testimony *if*, from all the evidence, the jury believes the

2   probability of truth favors the testimony in other particulars. *Id.*  Thus, Petitioner's assertion the

3   jury instruction shifted and diminished the state's burden of proof, by requiring the jury to accept

4   certain testimony, fails as a matter of law.  Given the foregoing, it is **RECOMMENDED** the

5   Court **DENY** Claim Four of the Petition.

6   **v.      Jury Instructions Barred Jury Consideration of Crucial Evidence**

7            Claim Five contends the trial court's "pinpoint instruction" concerning the state's key

8   witness, co-defendant Gabriel Uribe, unconstitutionally barred the jury from considering crucial

9   evidence.  More specifically, Petitioner claims the jury was barred from considering Uribe's

10  alleged motives arising from his "desire to obtain and defend his plea agreement." [Doc. No. 1 at

11  16.]

12           As previously stated, an allegedly erroneous instruction must be considered in the context

13  of the trial record and the instructions as a whole.  *Estelle v. McGuire* at 71-72; *Henderson* at 156;

14  *Cupp* at 146-47.  To merit relief, petitioner must show the instructional error so infected the entire

15  trial the resulting conviction violated due process. *Estelle v. McGuire* at 72; *Henderson* at 154;

16  *Cupp* at 147.  Petitioner appears to allege the jury instruction prevented the jury from considering

17  whether Uribe's testimony was untruthful and motivated by a desire to defend his plea agreement.

18  [Doc. No. 1 at 16-17 (alleging Uribe lied during his plea agreement arrangements concerning his

19  involvement in the murder).]  In support of his claim, Petitioner offers the following text of the

20  jury instruction at issue:

21           "The fact that Gabriel Uribe has entered a plea of guilt cannot be considered by you [the

22           jury] as evidence of the guilt of any other person."

23           "Also, the fact that the District Attorney's Office entered into an agreement with Gabriel

24           Uribe, a former defendant, has no bearing on the guilt or innocence of any other defendant,

25           and you must not draw any inferences therefrom." [Doc. No. 1 at 16 (*citing* CT 1482).]

26           Petitioner fails to demonstrate, or even specifically allege, how this jury instruction was

27  erroneous.  More importantly, Petitioner fails to show the jury instruction was sufficiently

28  erroneous as to infect the entire trial and result in a conviction that violated due process.  As such,

- 21 -                                                          03cv2194-J   (WMc)

Petitioner's claim does not state facts sufficient to merit relief.  Based on the foregoing, it is

**RECOMMENDED** the Court **DENY** Claim Five of the Petition.

**vi.      Ineffective Assistance of Appellate Counsel**

Claim Six asserts Petitioner's right to effective assistance of counsel was violated by the ineffectiveness of appellate counsel in failing to object on grounds two, six, and eight. Specifically, Petitioner contends "the grounds in question were sufficiently obvious and important that the failure to raise them constituted conduct falling beneath prevailing norms of professional conduct." [Doc. No. 1 at 21.]  Further, Petitioner asserts, "[b]ut for the identified lapses of appellate counsel, there is a reasonable likelihood that Petitioner's conviction would have been vacated on appeal." [*Id.*]

The standard for assessing the performance of trial and appellate counsel is the same. *Morrison v. Estelle*, 981 F.2d 425, 427 (9th Cir. 1992), *cert. denied*, 508 U.S. 920 (1993); *Miller v. Keeney*, 882 F.2d 1428, 1433-34 (9th Cir. 1989).  To prove prejudice, petitioner must demonstrate a reasonable probability that, but for his counsel's errors, the result of the appeal would have been different. *Strickland*, 466 U.S. at 694; *Morrison v. Estelle*, 981 F.2d at 427; *Miller v. Keeney*, 882 F.2d at 1433-34.  Further, review of counsel's performance is "highly deferential" and there is a "strong presumption" counsel rendered adequate assistance and exercised reasonable professional judgment. *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1987); *Strickland*, 466 U.S. at 690; *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985).

Petitioner specifically references ground two (contending jury instruction regarding the complicity element of felony-murder was erroneous), ground six (alleging pinpoint instruction barred consideration of crucial evidence) and ground eight (asserting cumulative error).  Petitioner fails to offer any support for his claim that, but for appellate counsel's failure to raise these grounds, the result of the appeal would have been different.  Furthermore, Petitioner has failed to demonstrate the alleged errors actually prejudiced him.  As previously stated, the strong presumption appellate counsel rendered adequate assistance places the burden on Petitioner to show otherwise.  In the absence of such support, the Court cannot determine Petitioner's appellate counsel's performance was inadequate and did not exercise reasonable professional judgment.  As

1    such, it is **RECOMMENDED** the Court **DENY** Claim Six of the Petition.

2    **vii.**     **Cumulative Error**

3          Claim Seven alleges cumulative error violated Petitioner's rights to due process, trial by

4    jury, and effective assistance of trial and appellate counsel.  [Doc. No. 1 at 20.]   Namely,

5    Petitioner requests the Court consider the cumulative effect of the following principal alleged

6    errors in this case: (1) jury instruction CALJIC 8.27 did not properly state the complicity element

7    of felony-murder; (2) CALJIC 2.21.2 regarding willfully false testimony shifted and diminished

8    the State's burden of proof; (3) pinpoint jury instruction prevented the jury from considering the

9    alleged motives concerning co-defendant Gabrial Uribe's testimony at trial; (4) alleged jury

10   misconduct; and (5) trial counsel's refusal of lesser-related accessory instruction regarding counts

11   One and Three.  Petitioner argues the alleged errors resulted in cumulative error sufficiently

12   prejudicial to warrant reversal.

13         "In some cases, although no single trial error examined in isolation is sufficiently

14   prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a

15   defendant." *United States v. Frederick*, 78 F.3d 1370, 1380 (9th Cir. 1996); *see Mak v. Boldgett*,

16   970 F.2d F.2d 614, 622 (9th Cir. 1992), *cert. denied*, 113 S. Ct. 1363 (1993); *see United States v.*

17   *Green*, 648 F.2d 587 (9th Cir. 1981); *United States v. Wallace*, 848 F.2d 1464, 1475 (9th Cir.

18   1988); *Kelly v. Stone*, 514 F.2d 18, 19 (9th Cir. 1975).  Further, the cumulative effect of an

19   attorney's errors may demonstrate prejudice. *See Mak*, 970 F.2d at 622; *see also Harris v. Wood*,

20   64 F.3d 1432 (9th Cir. 1995) (cumulative errors amounted to ineffective assistance).  When

21   numerous errors occur at trial, "a balkanized, issue-by-issue harmless error review is far less

22   effective than analyzing the overall effect of all the errors in the context of the evidence introduced

23   at trial." *Frederick*, 78 F.3d at 1380; *Wallace*, 848 F.2d at 1476.  Finally, in cases in which the

24   evidence is closely balanced, "a defendant is more likely to be prejudiced by the effect of

25   cumulative errors." *Frederick* at 1380.

26         Petitioner has failed to demonstrate any single trial error sufficiently prejudicial to warrant

27   reversal.  Further, Petitioner has failed to show these alleged errors "had substantial and injurious

28   effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637

1   (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  Most importantly, Petitioner

2   has not shown any of the alleged errors were, in fact, errors.  Therefore, the overall effect of the

3   alleged errors in the context of the evidence introduced at trial need not be analyzed to support a

4   claim for cumulative error.  *See United States. v. Banks*, 506 F.3d 756, 773 (9th Cir. 2007).  Even

5   if the Court were to perform such an analysis, the overall effect of the alleged errors in the context

6   of the evidence introduced at trial would not result in a finding of prejudice to Petitioner sufficient

7   to warrant a reversal.  Based on the foregoing, it is **RECOMMENDED** the Court **DENY** Claim

8   Seven of the Petition.

9   **viii.**    **Juror Misconduct**

10       Claim Eight pertains to jury misconduct.  Petitioner asserts juror statements during

11  deliberations, regarding Petitioner's gang affiliation, as well as jurors' beliefs the Defendants

12  would "do it again" "if we let them off" amounted to prejudicial error.  [Doc. No. 1 at 19.]

13  Petitioner supports his claim by referencing post-trial jury interviews in which several jurors

14  admitted the word "gang" had come up during deliberations "a couple of times." [*Id.*]

15

16       In performing their duty, jurors may consider only the evidence presented to them in open

17  court. *United States v. Navarro-Garcia*, 926 F.2d 818, 821 (9th Cir. 1990); *Bayramoglu v. Estelle*,

18  806 F.2d 880, 887 (9th Cir. 1986).  However, a juror's past experiences may be an appropriate part

19  of the jury's deliberations, as long as the experience does not include personal knowledge of the

20  parties or issues of the case.  *Navarro-Garcia* at 821.  Jurors inevitably must rely on their past

21  personal experiences when deciding a verdict.  *Id.*  However, a new trial is warranted if there is a

22  reasonable possibility the extrinsic evidence a juror presented to the jury affected the verdict.

23  *Navarro-Garcia* at 821; *Bayramoglu v. Estelle* at 887.  The exposure of facts not in evidence to a

24  jury deprives a defendant of the rights to confrontation, cross-examination, and assistance of

25  counsel, all embodied in the Sixth Amendment.  *See Dickson v. Sullivan*, 849 F.2d 403, 406 (9th

26  Cir. 1988); *see also Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993) (introduction of

27  extraneous prior bad acts evidence during deliberations constitutes error of constitutional

28  proportions), *cert. denied*, 510 U.S. 1191 (1994).  A petitioner is entitled to habeas relief, however,

only if he can establish the constitutional error had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 638 (citing *Kotteakos*, 328 U.S. at 776).

In evaluating whether a juror's introduction of extrinsic evidence affected and/or influenced the deliberations, a court should consider five factors: (1) whether the extrinsic material was actually received, and if so, how; (2) the length of time the evidence was available to the jury; (3) the extent the jury discussed and considered the evidence; (4) the point in the deliberations at which the evidence was introduced; and (5) any other relevant matters. *Navarro-Garcia*, 926 F.2d at 822-23; *Bayramoglu v. Estelle*, 806 F.2d at 887. Other relevant matters may include whether the misconduct related directly to a material aspect of the case and whether the trial judge gave a curative instruction to the jury in order to alleviate the prejudicial impact of the extrinsic evidence. *Navarro-Garcia* at 823; *Bayramoglu v. Estelle* at 888.

In post-trial interviews held on February 27, 1998, several jurors admitted the word "gang" came up during various points in deliberations. However, in separate interviews, each of the jurors assured the extrinsic evidence regarding Petitioner's gang affiliation was not considered. One juror described in her interview when the topic of gangs arose, "the rest of [the jurors] would jump down their throats and say, 'whether they are or not we can't consider [it] and we didn't. We didn't even discuss it." [Doc. No. 1 at 19 (CT 1673).] That juror added the gang affiliation discussion "was really squashed right away. Everybody else said, '[d]on't talk about that.'" [*Id.*] Another juror shared a similar experience: the word "gang" came up a "couple of times" during deliberations and the other jurors responded by saying, "we can't talk about that . . . [t]hat was not part of the evidence, or whatever" and the subject was "squashed right there." [*Id.* (CT 1673-74).] Yet another juror confirmed during her post trial interview the subject of gangs had arisen during deliberations, adding jurors had responded by saying they should not look at that factor, that it could not be considered evidence. [*Id.* (CT 1674).] In light of the five factors set forth in *Navarro-Garcia*, the introduction of extrinsic evidence regarding Petitioner's gang affiliation does not appear to have sufficiently prejudiced the jury to entitle Petitioner to habeas relief. As Petitioner notes in his Petition, the jurors immediately disregarded statements made during deliberations referencing "gangs" or gang affiliation. In fact, any such mention was met with

resistance, admonition, and was immediately dismissed.  It appears the jury did not discuss or consider the extrinsic evidence with any seriousness, nor did the error have a substantial and injurious effect or influence on the jury's verdict.  Rather, the alleged misconduct was *de minimus* and unlikely resulted in any prejudice to Petitioner.  Based on the foregoing,  it is **RECOMMENDED** the Court **DENY** Claim Eight of the Petition

## VI.  CONCLUSION AND RECOMMENDATIONS

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing Judgment be entered **DENYING** this Petition.

**IT IS ORDERED** that no later than September 14, 2009, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than September 30, 2009.  The parties are hereby advised that failure to file objections within the specified time period may result in a waiver of those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Ylst*, 951 F.2d at 1156.

DATED:  August 13, 2009

Hon.  William McCurine, Jr.
U.S. Magistrate Judge
United States District Court