1

2

3

4

5

6          **UNITED STATES DISTRICT COURT**

7        **SOUTHERN DISTRICT OF CALIFORNIA**

8

9

RICARDO VASQUEZ,                    )     Civil No. 03cv2194 DMS (WMc)
10                                      )
                                        )     **ORDER:**
11               Petitioner,            )
                                        )     **(1) OVERRULING PETITIONER'S**
12       v.                             )     **OBJECTION;**
                                        )
13                                      )     **(2) ADOPTING THE REPORT &**
CHERYL PLILER, Warden,                  )     **RECOMMENDATION;**
14                                      
                                              **(3) DENYING THE PETITION FOR**
15               Respondent.                  **HABEAS CORPUS; and**

16  _____           **(4) DENYING A CERTIFICATE OF**
                                              **APPEALABILITY.**
17

18

19          Before this Court is Ricardo Vasquez's ("Petitioner") Petition for Writ of Habeas Corpus

20  pursuant to 28 U.S.C. § 2254, challenging his San Diego Superior Court conviction (Case No.

21  SCD120491).  His Petition has been remanded to this Court by the United States Court of

22  Appeals for the Ninth Circuit. [Doc. No. 39.]  In his original Petition to this Court, Petitioner

23  challenged his convictions for first degree murder, accessory to attempted murder, and second

24  degree robbery.  [Pet. 1.]  This Court denied the Petition, finding the claims procedurally barred.

25  [Doc. No. 18.]  The Ninth Circuit Court of Appeals remanded the Petition for consideration of

26  whether Petitioner's statute of limitations may be equitably tolled, possibly preventing proce-

27  dural default.  [Doc. No. 39.]  Magistrate Judge William McCurine, Jr. has filed a Report and

28  Recommendation ("R&R"), recommending that the Court grant equitable tolling to Petitioner.

                                      1                           03cv2194 DMS (WMc)

[Doc. No. 51.]  After reviewing the merits of his Petition, Magistrate Judge McCurine recommends that the Court deny the Petition for Writ of Habeas Corpus.  [*Id.*]  This Court has considered the Petition, Petitioner's Objection to the R&R, and all supporting documents submitted by the parties.  Having considered these documents, this Court **GRANTS** equitable tolling to Petitioner.  With regard to the Petition's merits, the Court **DENIES** Vasquez's Petition for Writ of Habeas Corpus in its entirety.

### Statement of Facts

28 U.S.C. § 2254(e)(1) provides that a "determination of a factual issue made by a State court shall be presumed to be correct" in a federal habeas corpus petition.  "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*  Accordingly, this Court presumes the following facts, taken from the California Court of Appeal's opinion regarding Petitioner's direct appeal, are correct.  (Supp. Lodgment No. 1.)[1]

> Raul [Avitia] testified that on October 27, 1996, he lived on Franklin Street in San Diego with his father Juan, his brother, his sisters and his mother.  At approximately 10:00 p.m., Raul and Juan left their home and walked to Raul's cousin's home.  As Raul and Juan were returning home, walking up 30th Street, a group of men came up to them. Raul and Juan crossed the street and an individual crossed the street behind them and said in Spanish, "Hey, guy, you have $5?"  The man came from a van that was facing 31st Street.  The man was tall, kind of chubby "Mexican," 20 to 27 years old, had a short, flattop haircut and was wearing a brown T-shirt.
>
> Raul told the man he did not have any money.  The man took a step backwards, came back, and punched Raul on the left side of his forehead. Raul heard others running up from behind, and he and Juan ran toward a gas station.  Raul could hear four or five people running behind them.  Raul felt another blow on the back left side of his head, towards the top.  After that, he lost consciousness.  When he regained consciousness, people were hitting him.  He was lying on the ground face down, with his legs in the street and his chest on the sidewalk.  At that point  he saw his father Juan getting hit.  The same people who had been kicking him were also hitting his father, who was about five feet away.  The attackers would beat Raul, then beat Juan, and then come back to Raul.

---

[1] Petitioner's appeal was consolidated with those of co-defendants Arath Blanco, Rodrigo Juan Fuerte, Jose Garcia, Angel Ojeda, and Gabriel Uribe for purposes of direct appeal before the California Court of Appeal.  (Supp. Lodgment No. 1.)

Several men were striking Raul, kicking him in the head, face, neck and torso.  Raul had his hands over his head as he was being kicked.  Some of the assailants were wearing boots.  Raul was on the ground for about 10 minutes while he was being kicked and could not breathe.  When he let out a moan, someone said, "Well, let's go," and the assailants ran towards an alley.

Raul tried to get up but kept falling backwards.  After about five minutes, he got up and walked towards Logan Avenue.  He did not know his whereabouts.  He then remembered what had happened, and he came back and found his father lying on the ground below the sidewalk.  Juan's nose looked "really wide."

Raul moved Juan to the sidewalk.  He pushed his father's chest to try to get air moving.  At that point his father was still breathing.  Raul told a man who drove by in a truck that he and his father had been beaten up.  Police officers arrived.  By that time Juan was not breathing.

The police took Raul to the hospital.  Raul suffered a sunken rib, a cut to the back of his head, and lumps on his head.  Staples were put on the wound to his head to close it.  After the attack, Raul's and Juan's wallets were missing.  All Raul had in his wallet was $4.00 and a Price Club card.  Raul did not know if there was any money in Juan's wallet.

(Supp. Lodgment No. 1 at 5-7; footnote removed.)

Two witnesses, Myrna Zerpa and Mario Monterrosa, testified to Petitioner's involvement in the attacks on Raul and Juan.  Monterrosa identified Petitioner as the individual who approached Juan and Raul asking for money, who then began beating Raul.  (*Id.* at 7-10.) Monterrosa admitted, however, that he drank a 12-pack of beer and half of a bottle of vodka the evening of the murder and assault.  (*Id.*)  On cross-examination, he also admitted he drank tequila that evening, and that he had used crack cocaine on a daily basis for quite some time.  He additionally stated that between the time of the murder and his subsequent interviews with the authorities, he had attempted to recreate his memory of events, once using PCP to do so.  (*Id.* at 9.)

As part of his plea bargain, Gabriel Uribe, a co-defendant, testified to Petitioner's involvement in the murder and assault.  (*Id.* at 10-14.)  Uribe testified to having witnessed Petitioner and another individual discard the victims' wallets.  He admitted he attended a meeting at Petitioner's house after the attacks, during which Petitioner "told everyone that they should make up a story and indicated that he had already made up a story."  (*Id.*)

03cv2194 DMS (WMc)

### *Procedural Background*

In December 1997, a jury convicted Petitioner of first degree murder, accessory to murder, and second degree robbery.  (Supp. Lodgment No. 1 at 2.)  Petitioner was sentenced to 25 years to life with a concurrent middle term of three years.  (*Id.*)  Petitioner filed timely appeals with the California Court of Appeal, and the court affirmed his conviction on April 30, 2001.  (Supp. Lodgment No. 1.)  He then appealed to the California Supreme Court, which denied review on August 8, 2001.  (Supp. Lodgment No. 3.)

On July 25, 2002, Petitioner filed a petition for writ of habeas corpus with the California Superior Court, and the court denied the petition on August 15, 2002.  [Doc. No. 17 at 3.]  On September 3, 2002, Petitioner filed a habeas petition with the California Court of Appeal, and the court denied the petition on December 13, 2002.  [*Id.*]  On December 21, 2002, Petitioner filed a petition for review of this denial with the California Supreme Court.  The court denied the petition on February 25, 2003.  [*Id.*]

On March 9, 2003, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court.  [*Id.*]  Petitioner raised eight issues: (1) the trial court erred when it instructed the jury that co-defendant Gabriel Uribe was an accomplice as a matter of law; (2) the trial court erred when it denied an evidentiary hearing on Petitioner's motion to quash the jury panel; (3) ineffective assistance of trial counsel; (4) jury instruction 2.21.2 violated his right to due process; (5) the trial court's "pinpoint instruction" about the state's key witness unconstitutionally barred the jury from considering crucial evidence; (6) ineffective assistance of appellate counsel; (7) cumulative error violated his rights to due process, trial by jury, and effective assistance of trial and appellate counsel; and (8) juror misconduct.  [*Id.*]  On October 29, 2003, the court denied the petition, citing *In re Clark*, 5 Cal. 4th 750 (1993) and *In re Robbins*, 18 Cal. 4th 770, 780 (1998).  [Supp. Lodgment No. 4.]

On November 3, 2003, Petitioner filed the current Petition, raising claims identical to those raised in his March 9, 2003 petition to the California Supreme Court.  (Pet. 1.)  This Court denied the petition on August 17, 2004, holding that although Petitioner timely filed his Petition, he was barred from receiving federal habeas relief by state procedural rules.  [Doc. No. 18.]  In

judging the Petition as timely, this Court relied on *Dictado v. Ducharme*, 244 F.3d 724 (9th Cir. 2001), finding Petitioner entitled to a statutory tolling of the one-year limitations period for the time during which his final state habeas petition was pending before the California Supreme Court.  [*Id.* at 7.]

While Petitioner's appeal to the Ninth Circuit Court of Appeals was pending, the United States Supreme Court decided *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), abrogating the *Dictado* holding by denying the application of statutory tolling during the pendency of a petition that is not properly filed.  Through its citation to *In re Clark* and *In re Robbins*, the California Supreme Court denied Petitioner's final state habeas petition as untimely.  *See In re Clark*, 855 P.2d 729 (Cal. 1993); *In re Robbins*, 959 P.2d 311, 317-18 (Cal. 1998).  As such, Petitioner's final state habeas petition was not "properly filed" as required by 28 U.S.C. § 2244(d)(2), thereby preventing the application of statutory tolling of the limitations period during the pendency of that petition.  *See Pace*, 544 U.S. at 413.  Petitioner's federal habeas petition, therefore, was untimely.  [Doc. No. 39 at 2.]  The Ninth Circuit Court of Appeals remanded the case to this Court for the purpose of determining whether Petitioner is entitled to equitable tolling of the one-year statute of limitations.  [Doc. No. 39.]  Accordingly, this Court issued an Order for Additional Briefing and Lodgments on March 28, 2008.  [Doc. No. 48.] Magistrate Judge McCurine issued an R&R on August 13, 2009. [Doc. No. 51.] Petitioner filed an Objection to the R&R on October 5, 2009. [Doc. No. 54.]

### *Legal Standards*

### I.   Scope of Review

A federal court must grant a petitioner's habeas corpus petition if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs all habeas corpus petitions filed after 1996.  *See, e.g., Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Weaver v. Thompson*, 197 F.3d 359, 362 (9th Cir. 1999).  Under AEDPA, a petitioner's habeas corpus petition must show that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal Law" or that the decision "was based on

1   an unreasonable determination of the facts in light of the evidence presented in the State court

2   proceeding." 28 U.S.C. § 2254(d).

3        The United States Supreme Court has determined that a state court's decision is "contrary

4   to" its precedent "if the state court arrives at a conclusion opposite to that reached by [the United

5   States Supreme] Court on a question of law" or "if the state court confronts facts that are

6   materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite

7   conclusion than that of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A

8   state court's decision is an "unreasonable application" of federal law if "the state court identifies

9   the correct governing legal principle from [the United States Supreme] Court's decisions but

10  unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 412-13. An

11  unreasonable application of federal law requires the state court decision to be more than

12  incorrect or erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). Instead, the state court's

13  application must be "objectively unreasonable." *Id.*

14       If the dispositive state court does not "furnish a basis for its reasoning," however, federal

15  habeas courts must conduct an independent review of the record to determine whether the state

16  court unreasonably applied controlling federal law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th

17  Cir. 2000). "Independent review of the record is not de novo review of the constitutional issue,

18  but rather, the only method by which we can determine whether a silent state court decision is

19  objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

20  **II.     Reviewing Magistrate Judge's R&R**

21       The duties of a district court in connection with a magistrate judge's R&R are set forth in

22  Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). A district court

23  must "make a *de novo* determination of those portions of the report . . . to which objection is

24  made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations

25  made by the magistrate judge." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3) (2007); *see also*

26  *United States v. Raddatz*, 447 U.S. 667, 676 (1980) ("[I]n providing for a '*de novo*' determination

27  . . . Congress intended to permit whatever reliance a district judge, in exercise of sound judicial

28  discretion, chose to place on a magistrate's proposed findings and recommendations.").

*Discussion*

**I.     Remanded Issues**

The Ninth Circuit Court of Appeals vacated and remanded the Court's order, instructing the Court to determine whether Petitioner is entitled to equitable tolling of AEDPA's one-year statute of limitations.  Upon a determination of Petitioner's entitlement to equitable tolling, the Ninth Circuit instructed this Court to address whether Petitioner's habeas petition is procedurally defaulted due to failure to exhaust state remedies with respect to Claims One and Seven of his Petition.  Further, the Court must determine whether this Court is precluded from reaching the merits of Petitioner's claims because California's timeliness rule "is independent of the federal question and adequate to support the judgment." *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003).

     *A.     Equitable Tolling*

Under 28 U.S.C. § 2244(d), Petitioner must file a petition for writ of habeas corpus in federal court within one year from the date his conviction became final.  Petitioner's conviction became final on November 6, 2001, and he filed the present federal petition on November 6, 2003.  The Petition is time-barred, unless Petitioner is entitled to statutory or equitable tolling of the limitations period.

Petitioner's one-year statute of limitations began to run on November 7, 2001, the day after his conviction became final.  Petitioner filed a petition for post-conviction relief with the superior court on July 25, 2002, 259 days later.  [Doc. No. 18 at 5.]  Petitioner then filed a habeas petition with the California Court of Appeal on September 3, 2002, which was denied December 13, 2002.  [*Id.* at 3.] One week later, Petitioner filed a petition with the California Supreme Court.  The court denied the petition on February 25, 2003.  [*Id.*]  During this time, Petitioner was properly pursuing state collateral remedies, and statutory tolling applies.  *See Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999).  The Supreme Court has held post-conviction relief petitions will be deemed "pending" for purposes of 28 U.S.C. § 2244(d)(2), even during the intervals between the denial of a petition by one court and the filing of a petition for review at the next level.  *Carey v. Saffold*, 536 U.S. 214 (2002).  Therefore, AEDPA's statute of limitations was

1  tolled while Petitioner sought state court review from July 25, 2002 until February 5, 2003,

2  leaving 106 days remaining of AEDPA's limitations period.  *See Nino*, 183 F.3d at 1006.

3      Twelve days later, on March 9, 2003, Petitioner filed a petition for writ of habeas corpus

4  with the California Supreme Court.  [Doc. No. 18 at 5.]  Statutory tolling is not applicable for

5  these twelve days because "[a] petitioner is not entitled to tolling during the gap between the

6  completion of one full round of state collateral review and the commencement of another."

7  *Delhomme v. Ramirez*, 340 F.3d 817, 820 (9th Cir. 2003), *abrogated on another point as dicta in*

8  *Evans v. Chavez*, 546 U.S. 189, 196 (2006).  The California Supreme Court denied the petition on

9  October 29, 2003.  (Supp. Lodgment No. 4.)

10      On November 3, 2003, Petitioner filed the current Petition with this Court.  (Pet. 1.)  The

11  Petition is timely if AEDPA's statute of limitations period was tolled from March 9, 2003, when

12  Petitioner filed his last petition with the California Supreme Court, to October 29, 2003, when

13  that petition was denied.  [Doc. No. 18 at 4-6.] At the time the current Petition was filed, *Dictado*

14  *v. Ducharme* was the Ninth Circuit precedent in effect. 244 F.3d 724 (9th Cir. 2001).  *Dictado*

15  held a petition to be considered "filed when it is delivered to, and accepted by, the appropriate

16  court officer for placement into the official record." *Id.* at 726.  Thus, "the question whether an

17  application has been 'properly filed' is quite separate from the question whether the claims

18  contained in the application are meritorious and free of procedural bar." *Id.*  Petitioner's

19  California Supreme Court habeas petition was, therefore, "properly filed" according to Ninth

20  Circuit precedent, in spite of having been dismissed by the California Supreme Court as untimely

21  and successive.  As a result, this Court deemed Petitioner's federal habeas corpus petition timely

22  under AEDPA.  [Doc. No. 18.]

23      The Supreme Court overruled Ninth Circuit precedent in *Pace v. DiGuglielmo* by holding

24  "that time limits, no matter what their form, are 'filing' conditions."  544 U.S. 408, 417 (2005).

25  Under the rule announced in *Pace*, Petitioner's federal habeas corpus petition is time-barred

26  because AEDPA's statute of limitations would have run continuously from February 25, 2003.

27  However, where a good faith litigant might otherwise be prevented from "having a day in court,"

28

equitable tolling is permitted to "soften the harsh impact of technical rules." *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004).

Respondent argues in the first instance that 28 U.S.C. § 2244(d) does not allow for equitable tolling. [Doc. No. 45 at 6-16.] The Court finds this argument unavailing, as the Ninth Circuit has repeatedly held that equitable tolling is available in federal habeas petitions, including in its remand instructions to this Court in the present case. [*See* Doc. No. 39]   The Ninth Circuit "will permit equitable tolling of AEDPA's limitations period only if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) (quotations omitted).  Such tolling is "unavailable in most cases." *Id.*  However, where "external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." *Id.*  In order to receive the benefit of equitable tolling, Petitioner must establish he has been pursuing his rights diligently. *Pace*, 544 U.S. at 418.  Equitable tolling is typically denied when the litigant's own mistakes clearly contribute to his predicament. *Lawrence v. Florida*, 549 U.S. 327, 335-36 (2007).

The prisoner bears the burden of showing that such "extraordinary circumstances" exist and that equitable tolling should apply. *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). Petitioner claims his reliance upon then-current Ninth Circuit precedent which was later overturned created a circumstance beyond his control which made it impossible to file his Petition in a timely manner. [Doc. No. 42.] Respondent argues that Petitioner is not entitled to equitable tolling because he cannot demonstrate the "extraordinary circumstances" required for equitable tolling to apply. [Doc. No. 45.]  Respondent asserts Petitioner could have filed a timely petition if not for the "piecemeal," delayed manner in which Petitioner brought his claims.  [*Id.* at 16.] This delay, Respondent argues, demonstrates Petitioner does not meet the diligence requirement and should not benefit from equitable tolling.  [*Id.*] Respondent contends Petitioner's decision to seek multiple rounds of state appellate review was the direct result of his failure to understand AEDPA's statute of limitations, and clearly established federal law holds misunder-

1    standings on the part of Petitioner to be an invalid reason for the application of equitable tolling.

2    [*Id.*]

3           In *Harris v. Carter*, 515 F.3d 1051 (9th Cir. 2008), the Ninth Circuit held that equitable

4    tolling should be granted to the petitioner "*because* he relied on controlling Ninth Circuit

5    precedent in waiting to file his federal habeas petition." *Id.* at 1045 (emphasis in original). The

6    critical fact was "that [Petitioner] relied in good faith on then-binding circuit precedent in making

7    his tactical decision to delay filing a federal habeas petition." *Id.* at 1055. The Ninth Circuit

8    noted that by overturning *Dictado*, the Supreme Court immediately time-barred the petitioner's

9    petition, thereby making it impossible for him to file in a timely manner. *Id.* The court con-

10   cluded that "[t]hese are precisely the circumstances in which equitable principles justify tolling of

11   the statute of limitations." *Id.*

12          Petitioner, like Harris, sought multiple rounds of state post-conviction relief, the latter of

13   which was deemed untimely. *Dictado* was decided 15 months before the filing of Petitioner's

14   first state habeas petition. Therefore, Petitioner may be presumed to have been aware of and

15   relied upon *Dictado* in formulating his appellate strategy. *See Harris*, 515 F.3d at 1055.

16   Although Respondent is correct that Petitioner could have filed a timely petition under the *Pace*

17   standard had he opted to bring all of his claims at once, Petitioner's federal habeas corpus petition

18   remained timely under the rule set forth in *Dictado*. As such, Petitioner successfully meets the

19   diligence requirement for equitable tolling. Petitioner also meets the requirement of a showing of

20   extraordinary circumstances which prevent the timely filing of the petition: Petitioner had no

21   control over the Supreme Court's decision to abrogate *Dictado* and was correct in his interpreta-

22   tion of the then-applicable legal standard. Thus, in light of *Harris*, which contains facts analo-

23   gous to the facts in the case at bar, the Court **FINDS** that Petitioner is entitled to equitable tolling

24   of the statute of limitations.

25          *B. Exhaustion of State Remedies*

26          Upon determining Petitioner is entitled to equitable tolling, the Court must next address

27   whether Claims One and Seven of the Petition are procedurally defaulted due to failure to exhaust

28   state remedies. [Doc. No. 39 at 4.] Respondent concedes Petitioner exhausted Claim One, and

1   therefore, the Court must consider only whether Petitioner has exhausted state remedies with

2   regard to Claim Seven.

3         Petitioner asserts in Claim Seven that "Petitioner's rights to due process, to an impartial

4   jury, the right to confront witnesses against him, and the right to conduct cross-examination under

5   the 5th, 6th, and 14th Amendments was violated by jury misconduct (re: gang affiliation and the

6   assertion of the belief that the defendants would 'do it again' 'if we let them off'). (Pet. 16.)

7   Petitioner contends he properly exhausted Claim Seven during direct appeal through his

8   incorporation by reference of all his co-petitioners' arguments pursuant to Rule 28 of the

9   California Rules of Court. [Doc. No. 49 at 2.] Specifically, Petitioner incorporated by reference

10  co-petitioner Rodrigo Juan Fuerte's argument that "the prosecutor committed prejudicial

11  misconduct depriving Petitioner of his rights to due process and confront witnesses [*sic*] argued

12  on pages 6 to 12 of Fuerte's petition for review" and co-petitioner Arath Blanco's argument

13  regarding "whether the trial court erred in failing to modify CALJIC No. 3.01, and instructing the

14  jury regarding motive under CALJIC No. 2.51." (Supp. Lodgment No. 2 at 13.) However, upon

15  Order of this Court, Petitioner submitted further briefing on the issue, arguing "[w]hile . . .

16  Petitioner followed up his general incorporation by reference with statements regarding some

17  particular issues that had been raised in the other petitions, there is nothing in this section which

18  in any way limited his incorporation to only those issues later identified." [Doc. No. 49 at 3.]

19  Petitioner thus asserts that the statement "[P]etitioner incorporates herein by reference the

20  arguments advanced by his co-petitioners in their petitions for review" is sufficient "to include

21  presentation of all their arguments, including claim seven (the jury misconduct issue) presented

22  by co-petitioner Fuerte in his petition." [*Id.*] Petitioner further asserts "this conclusion is

23  buttressed by the fact that the California Supreme Court denied the petitions of all three defen-

24  dants in a single order." [*Id.*]

25        The California Court of Appeal affirmed Petitioner's conviction on April 30, 2001.

26  [Supp. Lodgment No. 1.] The court stated that "Fuerte, joined by Blanco and Vasquez, contends

27  that the court erred in denying his motion for a new trial based upon asserted juror misconduct."

28  (Lodgment No. 1 at 26.) The court repeatedly referred to "appellants" as a collective, further

1  supporting Petitioner's contention of inclusion through incorporation of his co-petitioner's

2  arguments.  Thus, the California Supreme Court's subsequent denial of Petitioner's habeas

3  petition marked the completion of state court review of Claim Seven, as the Supreme Court was

4  given a fair opportunity to review the merits of the claim.  *Roman v. Estelle*, 917 F.2d 1505 (9th

5  Cir. 1990).  The Court **FINDS** that the Petition is not procedurally defaulted for failure to exhaust

6  state remedies with respect to Claims One or Seven.  Accordingly, this Court considers the merits

7  of both claims, unless precluded from doing so by California's timeliness rule being independent

8  and adequate.

9         *C.  Independent and Adequate*

10         On habeas review, the California Supreme Court denied all eight of Petitioner's claims as

11  untimely under California law with citations to *In re Clark*, 5 Cal. 4th 750 (1993), and *In re

12  Robbins*, 18 Cal. 4th 770, 780 (1998).  It is well settled that a federal court will not upset a state

13  court's decision concerning a question of federal law if the decision is based on state law grounds

14  that are independent and adequate.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Fox

15  Film Corp. v. Muller*, 296 U.S. 207, 209-10 (1935); *Klinger v. State of Missouri*, 80 U.S. (13

16  Wall.) 257, 263 (1871).  The independent and adequate state ground doctrine applies not just to a

17  review of state court judgments, but also to a federal district court's evaluation of a state pris-

18  oner's habeas corpus petition.  *Coleman*, 501 U.S. at 729.  Accordingly, "[t]he doctrine applies to

19  bar federal habeas when a state court declined to address a prisoner's federal claims because the

20  prisoner had failed to meet a state procedural requirement.  In these cases, the state judgment

21  rests on independent and adequate state procedural grounds."  *Id.* at 729-30.

22         Further, in order to escape federal review, a state court decision must "indicate[] clearly

23  and expressly that it is alternatively based on bona fide separate, adequate, and independent

24  grounds."  *Michigan v. Long*, 463 U.S. 1032, 1041 (1983).  Additionally, the United States

25  Supreme Court has explicitly stated that a federal court may review a state court decision, in spite

26  of the independent and adequate state ground doctrine, if "the prisoner can demonstrate cause for

27  the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate

28

03cv2194 DMS (WMc)

1   that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*,

2   501 U.S. at 750.

3        The Ninth Circuit has placed the burden of proof on the state to plead the affirmative

4   defense of procedural default. *Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir. 2003). Placing the

5   burden on the state is "just" because "[i]t is the state, not the petitioner, often appearing pro se,

6   who has at its hands the records and authorities to prove whether its courts have regularly and

7   consistently applied the procedural bar." *Id.* The burden then shifts to the petitioner to "assert[]

8   specific factual allegations that demonstrate the inadequacy of the state procedure, including

9   citation to authority demonstrating inconsistent application of the rule." *Id.* at 586. Once the

10  petitioner satisfies his burden, however, "the ultimate burden is the state's." *Id.*

11       In its opinion in this case, the Ninth Circuit determined Petitioner had satisfied his burden

12  and shifted the burden to the state in order to establish the state procedural rule had become

13  adequate since the Ninth Circuit's contrary decision in *King v. LaMarque*, 464 F.3d 963, 966-68

14  (9th Cir. 2006). [Doc. No. 39 at 6-7.] Consequently, this Court ordered further briefing on

15  "[w]hether Respondent ha[d] met the burden of establishing California's independent timeliness

16  rule, held inadequate by this Court in *King v. LaMarque* because it is ambiguous and inconsis-

17  tently applied, ha[d] since become adequate." [Doc. No. 48.] Respondent failed to submit such

18  further briefing, and therefore failed to meet the requisite burden.[2] Accordingly, this Court is not

19  precluded from considering the merits of Petitioner's claims due to California's timeliness rule.

20  **II.    Petitioner's Claims**

21       This Court has concluded Petitioner was entitled to equitable tolling of AEDPA's statute

22  of limitations and therefore his Petition to this Court was timely. In addition, the Court has found

23  that he sufficiently exhausted Claims One and Seven with regard to state remedies. Further,

24

25  ───────────────

26       [2] On November 13, 2007, Respondent filed a Response to Order Directing Further Briefing from Respondent. [Doc. No. 45.] The Response provided briefing regarding the application of the doctrine of equitable tolling, but it failed to address the independence and adequacy of the state procedural bar. In response to the Court's March 28, 2008 Order for Additional Briefing and Lodgments, which specifically requested briefing on the independence and adequacy of the California timeliness bar, Respondent filed the requested supplemental lodgments, but no briefing on the timeliness bar. [Doc. No. 50.]

27

28

1   Respondent failed to meet their burden of establishing the independence and adequacy of

2   California's timeliness rule. Thus, the Court will consider Petitioner's federal habeas petition

3   claims on the merits.

4        A.  *Claim One*

5        Petitioner first claims the jury instructions defining felony-murder (CALJIC 8.27) did not

6   properly state the "complicity element" of the offense as described by California law.  (Pet. 6.)

7   Petitioner claims that the challenged instruction violated his constitutional rights under the Fifth,

8   Sixth, and Fourteenth Amendments.  (*Id.*)  CALJIC 8.27 provides, in pertinent part, "If a human

9   being is killed by any one of several persons engaged in . . . the crime of robbery, all persons who

10  directly or actively commit the act constituting the crime of robbery . . . are guilty of murder of

11  the first degree . . . ."  (CT 1547.)  Petitioner cites *People v. Pulido*, 15 Cal. 4th 713, 723 (1997),

12  in support of his argument.  (Pet. 6.)

13       "In conducting habeas review, a federal court is limited to deciding whether a conviction

14  violated the Constitution, laws or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62,

15  68 (1991); *see* 28 U.S.C. § 2254(a).  Habeas relief is not available for an alleged error in the

16  interpretation or application of state law.  *Estelle*, 502 U.S. at 67-68.  To merit relief, Petitioner

17  must show the instructional error so infected the entire trial that the resulting conviction violated

18  due process.  *Id.* at 72.  The allegedly erroneous instruction must be considered in the context of

19  the trial record and the instructions as a whole.  *Id.*

20       The California Supreme Court held in *People v. Pulido* that the first degree felony-murder

21  rule does not include aiders and abettors or conspirators who join the felonious undertaking after

22  the murder has been completed. 15 Cal. 4th at 725.  The court reasoned an accomplice must form

23  the intent to aid and abet before the commission of the murder in order to be guilty of first degree

24  murder.  *Id.* at 729.  Further, an accomplice is guilty of any homicide committed in furtherance of

25  a common purpose, even if the killing was perpetrated by another.  *Id.*

26       The facts in the instant case are distinguishable from those set forth in *Pulido*.  In *Pulido*,

27  the murder took place before the robbery, whereas the murder in Petitioner's case occurred during

28  the course of the robbery.  Specifically, the beating that ultimately killed Juan Avitia began

1  before Petitioner stole the victims' wallets and continued after the theft.  The importance of the

2  distinction between a homicide committed before the underlying felony and a homicide commit-

3  ted during the felonious act is exemplified by the underlying intent of the felony-murder rule,

4  which is "to deter felons from killing negligently or accidentally by holding them strictly

5  responsible for killings they commit."  *See id.* at 725.  As *Pulido* determined, extending the

6  felony-murder rule's complicity aspect to late joiners would not serve the rule's primary purpose.

7  This critical distinction between Petitioner's facts and those in *Pulido* demonstrate why the

8  *Pulido* decision does not apply to the instant case.

9          In his Objection to the R&R, Petitioner urges that CALJIC 8.27 did not require the jury to

10  determine which robbery Petitioner was engaged in at the time of Juan Avitia's murder - the

11  robbery of Raul Avitia or the robbery of Juan Avitia.  (Objection 2.)  In his Petition, he alleges

12  the felony-murder instruction did not require the jury to find that the murderers and the robbers

13  were engaged in the same robbery.  (Pet. 6.)  He claims the jury instruction given was so

14  prejudicial that there is a reasonable possibility a jury would have reached a more favorable result

15  to Petitioner had the instruction not been given.  *See People v. Watson*, 46 Cal. 2d 818, 836

16  (1956).

17          This Court does not find the jury instruction so prejudicial that a reasonable jury would

18  have reached a more favorable result to Petitioner had the instruction not been given.  The jury

19  instructions adequately informed the jury of a logical nexus between the felonies and the

20  homicide in this case.  Moreover, Petitioner has not shown how the jury verdict would have been

21  different had the instruction not been given.  Rather, he relies on conclusory allegations that the

22  result would have been different.  Such conclusory statements do not provide a sufficient basis

23  for the Court to conclude the jury instruction was in error.  *See Kopczynski v. The Jacqueline*, 742

24  F.2d 555, 560 (9th Cir. 1984).  The Court does not find any instructional error that so infected the

25  entire trial that the resulting conviction violated due process.  *Estelle*, 502 U.S. at 72.  Accord-

26  ingly, this Court **OVERRULES** Petitioner's Objection and **DENIES** Claim One of Petitioner's

27  habeas petition.

28          *B.  Claim Two*

1   Petitioner claims his rights to due process and trial by jury were violated by the trial

2   court's instruction to the jury that Gabriel Uribe was "an accomplice as a matter of law."  (Pet. 8.)

3   He asserts the instruction was inconsistent with much of the State's evidence, Petitioner's

4   testimony, and the defense theory.  (*Id.*)

5   Again, Petitioner relies on conclusory allegations rather than specific and concrete

6   evidence that his rights under the Fifth, Sixth, and Fourteenth Amendments were violated by the

7   jury instruction.  Consequently, this Court **OVERRULES** Petitioner's Objection and **DENIES**

8   Claim Two of Petitioner's habeas petition.

9   *C.  Claim Three*

10   Petitioner asserts the trial court erred when it denied an evidentiary hearing on Peti-

11   tioner's motion to quash the jury panel.  (Pet. 9.)  On October 22, 1997, Petitioner's trial counsel

12   filed a motion to challenge the composition of San Diego County juries and to quash all current

13   and available jury panels.  (*Id.*)  Further, his trial counsel requested an evidentiary hearing in

14   support of the motion.  (*Id.*)  The trial court denied the motion on October 20, 1997 and a

15   renewed motion on October 21, 1997, stating that no prima facie showing was made in either

16   motion.  (*Id.* at 10.)

17   Petitioner claims that jury-eligible Hispanics comprised 18% of the population of San

18   Diego County, yet only 4% of the panels were selected for Petitioner's case.  (*Id.* at 9.)  He

19   claims: "(1) a feature of the computer program used to merge voter registration and DMV lists

20   deleted names that appeared duplicative, resulting in a disproportionate elimination of Hispanics .

21   . . . [,] and (2) hardship and excusal policies inherently disfavored the hispanic [*sic*] population."

22   (*Id.* at 9-10.)

23   The burden rests on Petitioner to establish by clear and convincing evidence the factual

24   determination by the state court was erroneous.  Petitioner has not set forth the required evidence.

25   Further, after the R&R pointed out that Petitioner "fail[ed] to establish any of the circumstances

26   required to rebut the presumption of correctness," Petitioner merely objected to the magistrate

27   judge's finding.  (R&R 17; Objection 2.)  Absent support to the contrary, the trial court's

28   determination regarding an evidentiary hearing on Petitioner's motion to quash the jury panel is

16

1  presumed to be correct.  Based on the foregoing, the Court **OVERRULES** Petitioner's Objection

2  and **DENIES** Claim Three of Petitioner's habeas petition.

3      *D.  Claim Four*

4      Petitioner next claims his right to the effective assistance of counsel was violated by trial

5  counsel's failure to request the jury receive verdict options of accessory regarding Counts One

6  and Three.  (Pet. 11.)   Petitioner asserts the trial court offered to allow Petitioner lesser-related

7  instructions on Counts One through Three, but Petitioner's trial counsel, unlike the other four

8  defense attorneys in the case, refused the accessory instructions, except as to Count Two.  (*Id.*)

9  Petitioner alleges trial counsel's "refusal of the accessory instructions as to Counts One and Three

10 constituted conduct falling 'beneath prevailing norms of professional conduct.'" (*Id.*)  Petitioner

11 raised this claim in his direct appeal as an independent claim.  (Resp. Lodgment No. 10 at 132.)

12     "It has long been recognized that the right to counsel is the right to the effective assis-

13 tance of counsel."  *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  To succeed on an

14 ineffective assistance of counsel claim, Petitioner must make two showings.  First, he must

15 demonstrate that "counsel's performance was deficient.  This requires showing that counsel made

16 errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by

17 the Sixth Amendment."  Then, Petitioner must show that his counsel's deficient performance

18 "prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive

19 the defendant of a fair trial . . . ." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In other

20 words, Petitioner must demonstrate his counsel's error rendered the result unreliable or the trial

21 fundamentally unfair.  *Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993); *Strickland*, 466 U.S. at

22 694.  A court may deny a claim if it determines either counsel's performance was not deficient or

23 that counsel's performance did not prejudice the defense.  *Id.* at 700.  Moreover, "[r]eview of

24 counsel's performance is highly deferential and there is a strong presumption that counsel's

25 conduct fell within the wide range of reasonable representation (citations omitted)."  *United*

26 *States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1986).  The question is not what

27 defense counsel could have pursued but rather whether the choices made were reasonable.

28 *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998).

As noted above, the state court rejected Petitioner's independent claim of ineffective counsel.  While the record fails to indicate precisely why Petitioner's trial counsel opted to reject an instruction regarding a lesser-related offense, Petitioner bears the burden of showing his trial counsel's assistance fell below an objective standard of reasonableness.  *See Strickland*, 466 U.S. at 687-88.  In his Objection, Petitioner states trial counsel's decision was not reasonable trial strategy and was extremely prejudicial.  (Objection 2.)  However, this is not enough to overcome the presumption that trial counsel's decision was sound trial strategy.  Therefore, the Court **OVERRULES** Petitioner's Objection and **DENIES** Claim Four of Petitioner's habeas petition.

*E. Claim Five*

Petitioner challenges jury instruction CALJIC 2.21.2, stating it shifted and diminished the state's burden of proof.  (Pet. 12.)  CALJIC 2.21.2 provides:

> A witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others.  You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, **unless,** from all the evidence, you believe **the probability of truth favors his or her testimony in other particulars**.

(emphasis added by Petitioner.)  Petitioner contends, "[a]s to any witness found by the jury to be willfully false in any material part to their [*sic*] testimony, CALJIC 2.21.2 required the jury to accept the rest of [the witness's] testimony if it is 'probably true.'" (Pet. 19.)

As previously discussed, an allegedly erroneous instruction must be considered in the context of the trial record and the instructions as a whole.  *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  To merit relief, Petitioner must show the instructional error so infected the entire trial that the resulting conviction violated due process.  *Id.* at 72.

Petitioner fails to demonstrate that CALJIC 2.21.2 diminished the state's burden of proof.  Petitioner contends the jury instruction *required* the jury to accept certain witness testimony if it believed it to be "probably true."  Petitioner, however, misinterprets the jury instruction.  As cited, CALJIC 2.21.2 instructs the jury it *may reject* a witness's testimony in its entirety if the witness willfully testified falsely as to a material point.  The instruction further provides the jury with the option to accept the testimony if, from all the evidence, the jury believes the probability of truth favors the testimony in other particulars.  In his Objection, Petitioner brought forth no

1   further evidence to prove his claim.  Rather, he merely objected to the R&R's findings.  (Objec-

2   tion 3.)  Thus, Petitioner's assertion the jury instruction shifted and diminished the state's burden

3   of proof by requiring the jury to accept certain testimony fails as a matter of law.  Thus, this

4   Court **OVERRULES** Petitioner's Objection and **DENIES** Claim Five of Petitioner's habeas

5   petition.

6          *F.  Claim Six*

7          Petitioner argues the trial court's "pinpoint instruction" concerning the state's key

8   witness, co-defendant Gabriel Uribe, unconstitutionally barred the jury from considering crucial

9   evidence.  Petitioner claims the jury was barred from considering Uribe's alleged motives arising

10  from his "desire to obtain and defend his plea agreement."  (Pet. 13.)

11         Petitioner points out the jury was giving the following pinpoint instruction concerning

12  Uribe's plea agreement:

13         The fact that Gabriel Uribe has entered a plea of guilt cannot be
           considered by you as evidence of the guilt of any other person.
14
15         Also, the fact that the District Attorney's Office entered into an
           agreement with Gabriel Uribe, a former defendant, has no bearing on
           the guilt or innocence of any other defendant, and you must not draw
16         any inferences therefrom.

17  (Pet. 1, *citing* CT 1482.)

18         As previously stated, an allegedly erroneous instruction must be considered in the context

19  of the trial record and the instructions as a whole.  *Estelle v. McGuire*, 502 U.S. 62, 71-72

20  (1991).  To merit relief, Petitioner must show the instructional error so infected the entire trial

21  that the resulting conviction violated due process.  *Id.* at 72.

22         It appears Petitioner alleges the jury instruction prevented the jury from considering

23  whether Uribe's testimony was untruthful and motivated by a desire to defend his plea agreement.

24  (Pet. 14-15.)  Petitioner, however, fails to demonstrate how the jury instruction was sufficiently

25  erroneous as to infect the entire trial and result in a conviction that violated Petitioner's due

26  process.  Accordingly, this Court **OVERRULES** Petitioner's Objection and **DENIES** Claim Six

27  of Petitioner's habeas petition.

28         *G.  Claim Seven*

03cv2194 DMS (WMc)

1    Petitioner argues his constitutional rights were violated due to jury misconduct.  Specifi-

2    cally, he states that juror statements during deliberations regarding Petitioner's gang affiliation, as

3    well as jurors' beliefs the defendants would "do it again" "if we let them off" amounted to

4    prejudicial error.  (Pet. 16.)  Petitioner references post-trial juror interviews in which several

5    jurors admitted the word "gang" had come up during deliberations "a couple of times."  *Id.*

6        In performing their duty, jurors may consider only the evidence presented to them in open

7    court.  *United States v. Navarro-Garcia*, 926 F.2d 818, 821 (9th Cir. 1990).  However, jurors'

8    past experiences may be an appropriate part of the jury's deliberations, as long as the experience

9    does not include personal knowledge of the parties or issues of the case.  *Id.*  However, a new

10   trial is warranted if there is a reasonable possibility the extrinsic evidence a juror presented to the

11   jury affected the verdict.  *Id.*  The exposure of facts not in evidence to a jury deprives a defendant

12   of the rights to confrontation, cross-examination, and assistance of counsel, all embodied in the

13   Sixth Amendment.  *See Dickson v. Sullivan*, 849 F.2d 403, 406 (9th Cir. 1988).  However, a

14   petitioner is entitled to habeas relief only if he can establish the constitutional error had "substan-

15   tial and injurious effect or influence in determining the juror's verdict."  *Brecht v. Abrahamson*,

16   507 U.S. 619, 637 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

17       Five factors are relevant when evaluating whether a juror's introduction of extrinsic

18   evidence affected or influenced the deliberations: (1) whether the extrinsic material was actually

19   received, and if so, how; (2) the length of time the evidence was available to the jury; (3) the

20   extent the jury discussed and considered the evidence; (4) the point in the deliberations at which

21   the evidence was introduced; and (5) any other relevant matters.  *Navarro-Garcia*, 926 F.2d at

22   822-23.  A court may also consider whether the misconduct related directly to a material aspect of

23   the case and whether the trial judge gave a curative instruction to the jury in order to alleviate the

24   prejudicial impact of the extrinsic evidence.  *Id.* at 823.

25       In post-trial interviews held on February 27, 1998, several jurors admitted the word

26   "gang" came up at various points in deliberations.  However, in separate interviews, each of the

27   jurors assured the extrinsic evidence regarding Petitioner's gang affiliation was not considered.

28   One juror described in her interview that when the topic of gangs arose, "the rest of [the jurors]

would jump down their throats and say, 'whether they are or not we can't consider [it]' and we didn't. We didn't even discuss it." (Pet. 16 (CT 1673).) The juror added the gang affiliation discussion "was really squashed right away. Everybody else said, 'Don't talk about that.'" (*Id.*) Another juror stated the word "gang" came up a "couple of times" during deliberations and the other jurors responded by saying, "[W]e can't talk about that" and that "the subject was 'squashed right there.'" (Pet. 16 (CT 1673).) She further stated the subject of gang affiliation came up two or three times. (Pet. 16 (CT 1673-74).) Finally, another juror confirmed the topic of gang affiliation came up during deliberations, but that the other jurors responded by saying they could not look at that factor and that it could not be considered as evidence. (Pet. 16 (CT 1674).)

Petitioner has not established a constitutional error, much less that it had a "substantial and injurious effect or influence in determining the juror's verdict." *See Brecht*, 507 U.S. at 637. As Petitioner admitted in his Petition, the jurors immediately disregarded statements made during deliberations referencing the subject of gang affiliation. In fact, any such mention was met with resistance, admonition, and was immediately dismissed.

In his Objection, Petitioner objects to the magistrate judge's statement in the R&R that "the alleged misconduct was *de minimus* and unlikely resulted in any prejudice to Petitioner. (Objection 4.) He argues the possibility of gang membership repeatedly arose during jury deliberations, and therefore the repeated introduction was not *de minimus* and resulted in prejudice to Petitioner. (*Id.*) However, one juror reported the topic came up only a couple of times and was immediately squashed. (Pet. 16 (CT 1673).) Another juror stated the subject of gang affiliation "was not really not [*sic*] a discussion." (*Id.*)

Further, looking at the five factors outlined in *Navarro-Garcia*, Petitioner's claim fails. The extrinsic material was not actually received. Each time a juror attempted to bring up the topic of gang affiliation, the other jurors stated such evidence could not be considered in their decision. Additionally, the factors of considering the length of time the extrinsic evidence was available to the jury and the point in time that the evidence was introduced are irrelevant in the current case because, as stated, the extrinsic material was never actually received. Further, the

1    jurors did not discuss and consider the evidence.  Rather, they "squashed" the topic as soon as it

2    arose in deliberations.  *See Navarro-Garcia*, 926 F.2d at 822-23.  Accordingly, because Petitioner

3    has failed to prove juror misconduct, the Court **OVERRULES** Petitioner's Objection and

4    **DENIES** Claim Seven of Petitioner's habeas petition.

5          *H.  Claim Eight*

6          In Claim Eight, Petitioner states his constitutional rights were violated based on cumula-

7    tive error.  (Pet. 17.)  In support of this claim, he incorporates by reference the statements of

8    Claims One through Seven and the supporting facts contained therein.  (*Id.*)  He argues the

9    alleged errors resulted in cumulative error sufficiently prejudicial to warrant reversal.

10         "[E]ven if no single error were prejudicial error," cumulative error is applicable "where

11   there are several substantial errors . . . [that are] so prejudicial as to require reversal."  *Killian v.*

12   *Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002) (quoting *United States v. de Cruz*, 82 F.3d 856, 868

13   (9th Cir. 1996)).  Here, however, Petitioner has failed to demonstrate any single trial error was

14   sufficiently prejudicial to warrant reversal.  Further, Petitioner has failed to show any alleged

15   error "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*

16   *v. Abrahamson*, 507 U.S. 619, 637 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 776

17   (1946)).

18         Most importantly, Petitioner has not shown any of the alleged errors were, in fact, errors.

19   Therefore, the overall effect of the alleged errors in the context of the evidence introduced at trial

20   need not be analyzed to support a claim for cumulative error.  *See United States v. Banks*, 506

21   F.3d 756, 773 (9th Cir. 2007).   In his Objection, Petitioner objects to the findings of the R&R

22   that no cumulative error exists.  He claims the overall effect of the errors rises to the level of

23   reversal.  (Objection 4.)  However, because he has not proven any of his assertions of alleged

24   errors, his claim must fail.  Based on the foregoing, this Court **OVERRULES** Petitioner's

25   Objection and **DENIES** Claim Eight of Petitioner's habeas petition.

26         *I.  Claim Nine*

27         Petitioner's final claim asserts that his right to effective assistance of counsel was violated

28   because his trial counsel failed to object on the grounds outlined in Claims Two, Five, and Eight;

and his appellate counsel failed to raise Claims Two, Six, and Eight.  (Pet. 17.5.)  In Claim Two, Petitioner contended the jury instruction regarding the complicity element of felony-murder was erroneous.  (Pet. 8.)  Petitioner argued in Claim Five that jury instruction CALJIC 2.21.2 shifted and diminished the state's burden of proof.  (Pet. 12.)  Petitioner alleged the pinpoint instruction barred consideration of crucial evidence in Claim Six.  (Pet. 13.)  In Claim Eight, Petitioner asserted the existence of cumulative error.  (Pet. 17.)  Petitioner urges "the grounds in question were sufficiently obvious and important that the failure to raise them constituted conduct falling beneath prevailing norms of professional conduct."  (Pet. 17.5.)  Further, Petitioner insists that "[b]ut for the identified lapses of appellate counsel, there is a reasonable likelihood that Petitioner's conviction would have been vacated on appeal."  (*Id.*)

The standard for assessing the performance of trial and appellate counsel is the same. *Morrison v. Estelle*, 981 F.2d 425, 427 (9th Cir. 1992). As stated previously, review of counsel's performance is "highly deferential" and there is a "strong presumption" counsel rendered adequate assistance and exercised reasonable professional judgment.  *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1987).  Petitioner must prove both that his counsel's performance was deficient and that it prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

"Failure to raise a meritless argument does not constitute ineffective assistance."  *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985).  The Court has already found that Claims Two, Five, Six, and Eight are without merit.  Therefore, Petitioner's trial and appellate counsel's failure to raise these issues do not constitute deficient performance.  Further, Petitioner fails to offer any support for his claim that, but for his trial counsel's failure to object based on Claims Two, Five, and Eight and his appellate counsel's failure to raise Claims Two, Six, and Eight, the result of his trial and appeal would have been different.  As stated, the burden is on Petitioner to show prejudice.  In the absence of such support, the Court cannot determine his trial and appellate counsel's performance was inadequate.  As such, this Court **OVERRULES** Petitioner's Objection and **DENIES** Claim Nine of Petitioner's habeas petition.

**III.  Certificate of Appealability**

1      A state prisoner may not appeal the denial of a section 2254 habeas petition unless he

2 obtains a certificate of appealability from a district or circuit judge.  28 U.S.C. § 2253 (c)(1)(A);

3 *see also United States v. Asrar*, 116 F.3d 1268, 1269-70 (9th Cir. 1997) (holding that district

4 courts retain authority to issue certificates of appealability under AEDPA).  A certificate of

5 appealability is authorized "if the applicant has made a substantial showing of the denial of a

6 constitutional right."  28 U.S.C. § 2253(c)(2).  To meet this standard, Petitioner must show that:

7 (1) the issues are debatable among jurists of reason; (2) a court could resolve the issues in a

8 different manner; or (3) the questions are adequate to deserve encouragement to proceed further.

9 *Lambright v. Stewart*, 220 F.3d 1022, 1024-25 (9th Cir. 2000) (*citing Slack v. McDaniel*, 529

10 U.S. 473 (2000)); *Barefoot v. Estelle*, 463 U.S. 880 (1983).

11      Petitioner has not raised any issues "debatable among jurists of reason."  Therefore, the

12 Court **DENIES** Petitioner a certificate of appealability.

### *Conclusion*

14      For the reasons above, this Court **OVERRULES** Petitioner's Objection, **ADOPTS** the

15 R&R, and, accordingly, **DENIES** Vasquez's Petition for Writ of Habeas Corpus in its entirety.

16 In addition, the Court **DENIES** Petitioner a certificate of appealability.

18      **IT IS SO ORDERED.**

19 DATED:  May 26, 2010

_____

HON. DANA M. SABRAW
United States District Judge